JAMES FERO v. THE H. M. LOUD & SONS LUMBER
COMPANY.

*Reformation of contract—Equity—Mistake—Evidence.*

Complainant filed a bill to enforce the specific performance of a
contract for the sale of 40 acres of land for the sum of $80.
The defendant set up in its answer that, by mistake in draft-
ing the contract, a provision reserving the timber on the land
was omitted, and asked that the contract be reformed accord-
ingly. The evidence showed that the timber was worth $800;
that the complainant understood that the agent who made the
sale had no authority to sell the land with the timber; and
that complainant's attention was called to the omission of the
reservation clause at the time the contract was delivered to
him. And it is held that the whole case shows a very plain
attempt to overreach on the part of complainant, and that the
prayer of the defendant for a reformation of the contract
must be granted.

Appeal from Alcona.   (Simpson, J.)   Submitted on
briefs June 7, 1894.   Decided June 26, 1894.

Bill for the specific performance of a land contract.
Defendant appeals.   Decree reversed, and one entered
reforming the contract as prayed by defendant.   The facts
are stated in the opinion.

*O. E. M'Cutcheon,* for complainant.

*M. J. Connine,* for defendant.

MONTGOMERY, J.   The defendant is the successor of the
Oscoda Salt & Lumber Company.   This bill is filed for
the specific performance of a land contract, bearing date
the 12th day of April, 1886, between the Oscoda Salt &
Lumber Company and the complainant, by the terms of
which the company agreed to sell to complainant 40 acres

of land in township 26 N., range 8 E., for the agreed price of $80, payable in installments. The defense set up is that, by mistake of the parties, a provision in the written contract reserving the timber was omitted, and the answer asks that the written contract be reformed so as to conform to the original agreement and intent of the parties in that regard. The complainant was granted the relief prayed for in the bill, by the court below, and defendant appeals.

We are unable to agree with the conclusion reached by the circuit judge upon the question of fact. We think the testimony very clearly shows that the original contract was a contract for a sale of the land, reserving the timber, and that the complainant's course in insisting upon its performance is unconscionable. It is true the complainant does not admit the fact that, by the terms of the original parol agreement, the timber was reserved, but his testimony upon this point is not very satisfactory. He testifies on cross-examination:

"*Q.* Now, he reserved the timber, didn't he?

"*A.* No, sir.

"*Q.* What do you mean by that?

"*A.* I mean what the contract says.

"*Q.* Before the contract was signed, he was talking with you about the land, and told you the timber was not for sale?

"*A.* No, sir.

"*Q.* What did he tell you about the timber?

"*A.* He did not say very much about the timber.

"*Q.* Tell me what he told you about the timber.

"*A.* I could not tell you every word that he said about the timber.

"*Q.* You remember something?

"*A. Of course, I would have to take the contract as it read.*

"*Q.* Tell me what he said about the timber before the contract was made.

"*A.* I did not know anything about it at all.

"*Q.* Tell me what he said about the timber.

"*A.* The timber was not reserved, and it was not to be reserved, as I understood it.

"*Q.* I am asking you what he said about the timber.

"*A.* Of course, I know of some land that had been, but not exactly at that time, or previous to this, since this. I don't know whether they had before this or not. Since this time I think they have.

"*Q.* I ask you again what Mr. Buyers said about the timber.

"*A.* He did not say that there ever would be any timber reserved, or anything of the kind.

"*Q.* I am asking you what he did say.

"*A.* I could not exactly tell you what he said. *I think he said about the land.*

"*Q.* What did he say about the timber?

"*A.* There was nothing said about the timber; *nothing specially.*"

The witness further testified that he made no estimate of the timber before he bought the land, and the testimony fairly shows that the timber on the land was worth $800.

Mr. Buyers, the agent, on the other hand, testifies very fully that, before the contract was made, it was distinctly understood that the timber was to be reserved; that he received the contract, signed by Mr. Loud, as agent for the lumber company, and, when he delivered the contract to the complainant, called attention to the fact that the timber was not reserved, and the complainant said, "It is good enough for me," and signed the contract, and retained it. The testimony is very clear that Buyers had no authority to sell the land with the timber, and it is very clear that the complainant so understood it, and must have understood that the officers of the company had made a mistake in drawing the contract.

It is suggested in the brief of complainant's counsel that Buyers was not charged with the duty of knowing whether there was in fact any pine on lands that he bargained away, and there is no evidence that he had such

knowledge in this case; but there is evidence that he had sufficient so that he advised the complainant in the outset that the timber was to be reserved, and there is evidence that the complainant knew of the fact of there being timber upon the land, although he had made no estimate of it. The whole case shows a very plain attempt to overreach on the part of complainant. The case is in its facts much like that of *Osterhout & Fox Lumber Co. v. Rice*, 93 Mich. 353.

The decree will be reversed, and a decree entered reforming the contract as prayed in the answer of defendant. Defendant will recover costs of both courts.

The other Justices concurred.