## JOHNSON *v.* WILSON.[1]

1. LAND CONTRACT—MISTAKE—EVIDENCE.

   A vendor's claim that the word "heretofore," in a land contract providing for releases to the vendee on account of payments "heretofore" made, was a clerical error, and that "hereafter" was intended, is sustained by the testimony of the vendee and his agent that neither of them expected, at the time of the transaction, that the release clause would cover the down payment, taken in connection with other clauses in the contract indicating clearly that the parties had in mind releases for future payments only.

2. SAME—REFORMATION—EQUITY JURISDICTION.

   In a suit for the rescission of such contract based on the failure of the vendor to release for the down payment, a decree correcting the mistake is properly entered under the prayer of the defendant for affirmative relief.

Appeal from Wayne; Haire, J., presiding. Submitted October 8, 1896. Decided December 9, 1896.

Bill by William C. Johnson against Mary Wilson for the rescission of a land contract, and for the repayment of money paid thereon. From a decree for complainant, defendant appeals. Reversed.

*Otto Kirchner*, for complainant.

*Walker & Spalding* ( *C. A. Kent*, of counsel), for defendant.

---

[1] Rehearing denied January 16, 1897.

MOORE, J.   February 4, 1893, a contract was made between the parties to this litigation for the sale by Mrs. Wilson to Mr. Johnson of the undivided eight-thirteenths of 13 acres of land for the sum of $13,950, payable $4,000 down, $2,000 on or before July 1, 1894, $2,000 on or before July 1, 1895, and the remainder within five years, with interest at 6 per cent.   The land contract, which was signed by the parties, contained the following provisions:

" In case the party of the second part or his assigns shall plat the said premises, and shall cause Springwells and Casper avenues to be opened in a northerly and southerly direction through the same, with a row of lots fronting on the south side of ' Dix Avenue,' so called, said party of the second part or his assigns, from time to time, shall become entitled to conveyances of such portions of the said premises as he or they may select, which would be paid for in full by the payments heretofore made on account of the principal of such purchase price according to the following valuations: For frontage on Dix avenue at the rate of one hundred and fifty ($150) dollars for each lot of thirty (30) feet in width; for frontage on said Springwells and Casper avenues at the rate of one hundred ($100) dollars per lot of thirty (30) feet front.   In case said land is platted by said second party or his assigns in any other manner than the one above specified, said second party or his assigns shall have the right to have lots released upon payment of proportionate amounts of said principal sum due on this contract: *Provided*, that not less than five hundred ($500) dollars of principal shall be paid at any one time."

After the contract was made, complainant platted the land, and placed his plat upon record; the plat showing 13 lots on Dix avenue, and 111 on the other streets.   A controversy arose in relation to the release clause in the contract, the complainant insisting that by the use of the words "payments heretofore made" in the contract he was entitled to releases on account of the down payment of $4,000.   The defendant claimed that the word "heretofore" should have been written "hereafter," and that the writing of it was a clerical error, and that releases

were to be made only because of subsequent payments. July 5, 1895, complainant demanded a release of a number of lots on account of the down payment. Defendant refused to release them. The complainant then made a written demand for the money paid by him on the contract, with interest, and tendered a release of his rights under the contract. His demand was refused. He then filed this bill, praying for a rescission of the contract, a repayment of the moneys paid by him, and for a sale of the lots to satisfy his lien. The defendant filed an answer in the nature of a cross-bill, averring that the down payment of $4,000 was not to entitle the complainant to the benefit of the release clause, but that releases were to be made only for subsequent payments; also averring that because of a clerical error the word "heretofore" was written where it was intended to write the word "hereafter." The cross-bill prayed for a decree reforming the contract by substituting the word "hereafter" for the word "heretofore," and that the complainant might be decreed to pay the amount due upon the contract, and that the contract be foreclosed according to the course of procedure in the foreclosure of mortgages. A replication was filed, and after a hearing in open court a decree was entered in accordance with the prayer of the bill.

A great many questions are raised in the very carefully prepared briefs of counsel. In our view of the case, there are but two questions that need be discussed here: *First.* Was a mistake made in writing the word "heretofore" where it was intended to write the word "hereafter?" *Second.* If a mistake was made, can it be corrected? A careful examination of the record leads us to the conclusion that a mistake was made. If releases were to be made, in case the land was platted, in the manner and at the prices stated in the contract, the land would all be released before it would be paid for,—a result that it is very evident the parties did not contemplate. If the

land was not platted in the manner provided for in the contract, the provision is:

"Said second party or his assigns shall have the right to have lots released upon payment of proportionate amounts of said principal sum due on this contract: *Provided*, that not less than five hundred dollars of principal shall be paid at any one time."

This language indicates very clearly that the payments the parties had in mind were payments to be made in the future, and did not apply to the $4,000 payment made the day the contract was signed. On cross-examination the complainant testified in answer to the question, "Had you any expectation, until you read the contract, that the release clause would give you the right to have lots released for the down payment of $4,000?" Answer: "I can't say that I did." The testimony of Mr. Harrah, who appeared in the transaction for Mr. Johnson, and who was a real-estate agent of long experience, and who looked over the contract with Mr. Johnson before it was signed, is that he never knew a contract that entitled a party to have lots released for the down payment, and that he did not advise Mr. Johnson that the release clause he was to look for should cover the down payment as well as the subsequent payments. He also testified that he and Mr. Johnson talked over, in connection with the release clause, the number of lots the land would make, and the cost of the lots to Mr. Johnson. He also testified that, from his talk with Mr. Johnson, he did not expect to find in the contract a provision that the release clause should cover the down payment. It will not be necessary to refer to more of the testimony. It is sufficient to say that we have no doubt the parties understood that the release clause was expected to refer to subsequent payments.

The next question is, can the mistake be corrected, and the contract be reformed? In the case of *Bush* v. *Merriman*, 87 Mich. 260, it was held:

"In this State the distinction between law and equity, as applied to remedies, has been kept up. The courts of law have no jurisdiction to reform written agreements. This jurisdiction is exclusively vested in courts of equity, and it has long been settled that if, by reason of fraud, mistake, accident, or surprise, an instrument does not express the true intent and meaning of the parties, equity will, upon satisfactory evidence, reform it."

See, also, *Conlin* v. *Masecar*, 80 Mich. 139; *De Riemer* v. *Cantillon*, 4 Johns. Ch. 85; *Albany City Savings Inst.* v. *Burdick*, 87 N. Y. 40. We have no doubt of the authority of this court to correct the mistake.

The decree of the court below is reversed, and a decree should be entered correcting the mistake in the contract; also giving the complainant an opportunity to perform his part of the contract, and, in default thereof, that the land contract be foreclosed according to the practice in the foreclosure of mortgages.

The other Justices concurred.