## CRAM v. WARD.

1. DEEDS—PROPERTY CONVEYED—APPURTENANCES.
   The exclusive and unrestricted use of land carries with it title
   to the land itself.

2. SAME—RESERVATIONS—RIGHTS OF GRANTOR.
   The purchasers of lots fronting on a beach, their deeds granting
   them the right in common to make such use of the beach as
   is usual at summer resorts, on all the lots on the plat being
   granted, take the fee of the beach, and leave the grantor
   without right to enter thereon and remove sand, irrespective
   of whether such entry interferes with the grantees' use of
   it as a summer resort.

Appeal from St. Clair; Law, J. Submitted June 10,
1904. (Docket No. 12.) Decided July 27, 1904.

Bill by Roys J. Cram against Charles A. Ward and
others to restrain the removal of sand from a beach in
which complainant and other of defendants' grantees have
an undivided interest. From a decree for complainants
granting insufficient relief, complainant appeals. Re-
versed and decree entered for complainants.

Defendant Ward, being the owner of certain lands in the
township of Ft. Gratiot, lying between a public highway
known as the "Lake Road" and the shores of Lake
Huron, platted the same, and duly recorded the plat. It
shows 59 lots, each with a frontage of 50 feet, fronting on
the beach, and running back 300 feet to the road. This
land was platted for the sole purpose of a summer resort.
All the lots have been sold, and nearly all built upon—
some quite expensive residences. The purpose of the
grantor, Ward, in platting this land and in selling the lots,
was to provide and keep intact the beach in front of the
lots for the common benefit of all the lot owners and sum-
mer residents. If the lots had been sold as extending to

the shore, they evidently would not have been as valuable as they now are, because it would be in the power of any owner to fence in his portion of the beach, and destroy it as a place of resort. Each of the deeds made by Mr. Ward to his grantees, and by his grantees to others, contains this provision:

"Together with the right to use in common with other grantees, and persons who shall become grantees of the party of the first part, her heirs and assigns, of all land lying between the platted portion of said Gratiot Beach and the waters of Lake Huron, which use and enjoyment by said second party, other grantees, and persons, shall be limited to such use as is usual for residents and visitors at a family summer resort, to make of a beach in connection with such resort."

Following this is also a provision against selling or keeping for sale upon said premises intoxicating liquors, and making such deed void if the grantee violates the provision.

Complainant owns a valuable summer residence. The defendants, claiming to own the land between the lots and the shore, are selling and permitting to be drawn away, in large quantities, the sand which makes the beach. This sand, which at the time was not supposed to possess any commercial value, has proved to be very valuable for the manufacture of concrete. Teams were employed in drawing the sand away, and as a summer resort the place was practically destroyed. This bill was filed to restrain the defendants from removing the sand.

The defendants deny that the complainant has any right or interest in the land between his lot and the shore, or any right to interfere with them or their agents in removing the sand. They admit that complainant has an easement in the land, but say that the removal of the sand does not in any way interfere with such easement. The case was heard upon pleadings and proofs taken in open court, and a decree was entered declaring that the said complainant and the other lot owners, by virtue of their deeds, obtained an "easement or right to use and

enjoy for such use as is usual for residents and visitors at a family summer resort to make of a beach in connection with such resort, and for no other purpose or use, all the land lying between the east line of said lots and the waters of Lake Huron; * * * that the removal of sand and gravel, as the proof shows it to have been taken away, produces no permanent impairment or injury to said easement." The decree then enjoins the removal of sand and gravel from said beach between the 15th day of June and the 15th day of September of each year, for the reason that the removal at that time is a discomfort, inconvenience, and annoyance to the lot owners and to visitors.

*Stevens, Graham & Stevens* (*William T. Mitchell,* of counsel), for complainant.

*Frank T. Wolcott* and *Thomas Wellman,* for defendants.

GRANT, J. (*after stating the facts*). The theory of the complainant is that he and the other grantees of Mr. Ward acquired the exclusive use and control, for them and their grantees forever, of the land known and designated on the plat as the " beach."

The theory of the defendants is that the complainant and other grantees of Ward acquired only an easement to use the land during the summer season as a resort, and that Ward reserved in himself the fee of the land, and the right to use it as he saw fit, subject to such easement.

The situation at the time becomes material in construing the language of the deed. The land was of little value unless it could be utilized as a summer resort. Should the narrow lots run to the lake shore, the beach would be of comparatively little value to the owners, for each could make such use of his own narrow lot as he saw fit. He could fence it, or place at the shore or elsewhere on his lot any building he might choose to erect. It would therefore be impracticable to preserve the land as a beach

or park if the lots extended to the water. Therefore Mr. Ward adopted the plan of laying out the lots fronting on a part of the land next to the water, to be known as the "beach," and conveying to each lot owner the right to use the beach in common with all the others. Under this arrangement the lots, most of which have been sold and built upon, have become very valuable. If the beach is destroyed, the lots and buildings thereon are of but little value.

The evidence is conflicting as to the damage done to the beach by the removal of the sand. Witnesses for the complainant testify that the effect is to expose the rocks, and to substitute gravel for the hard sand, and to do great injury to the beach. The evidence on the part of the defendants controverts this position. We find it unnecessary to determine to what extent the removal of the sand injures the property of the lot owners.

What did Mr. Ward convey to his grantees? There is nothing in the deed restricting the use in time or manner. The limitation is confined "to such use as is usual for residents and visitors at a family summer resort to make of a beach in connection with such resort." The limitation was not for the benefit of Mr. Ward, as grantor, but for the benefit of his grantees and himself, so long as he owned any of the land. The purpose of the limitation was to keep the beach forever in suitable condition to be used by all the grantees, their families, and visitors, for a common purpose, to wit, as their pleasure ground. If the language created only an easement, what did Ward reserve? In express terms, nothing; by implication, nothing which could in any manner interfere with the enjoyment by his grantees. He could not build docks, warehouses, or buildings. He could not cultivate or improve the land in any way he might see fit. He, so long as he owned any of the land, and his grantees, could unite in improving or building upon it, or in performing any act to which they all might agree. Did he reserve the right to dig up or remove the gravel or soil? Counsel for the defendants now

admit that he could not, if by doing so, he interfered with the use and enjoyment of plaintiff and his other grantees. How many lots would he have sold if he had reserved the right to remove the sand? Even if he had added thereto the words "so as not to interfere with his grantees in the use of the interest conveyed to them," no one would probably purchase land, with lawsuits sure to grow out of such a reservation. We think it clear that Mr. Ward's grantees acquired the exclusive right to use this land called the "beach." When he sold it all, he no longer had land adjoining the beach, by which he could get any interest in the beach. His grantees were not limited to a use for that period of time which a court or jury might determine was the usual season for a summer resort. They had the right of possession at any and all times, winter and summer, for the purposes of improvement, use, and enjoyment. They could build a breakwater, if necessary to prevent the encroachment of the waters. They could lay out drives, erect fountains, plant trees, make grass plats— in fact, could use and improve every foot of the land for the purpose designated in their deeds. This necessarily excluded any interest or right of possession in Mr. Ward. The exclusive and unrestricted use of land carries with it title to the land itself. *Reilly* v. *Booth*, L. R. 44 Ch. Div. 26; *Metropolitan R. Co.* v. *Fowler*, L. R. 28 Q. B. Div. 165; *Caldwell* v. *Fulton*, 31 Pa. St. 475 (72 Am. Dec. 760). In *Reilly* v. *Booth* certain parcels of land were conveyed, together with the exclusive use of a gateway into Oxford street, giving the dimensions, etc., of the gateway. It was held that the title to the gateway passed to the grantee. In *Metropolitan R. Co.* v. *Fowler* the railroad company acquired the right to, and did, construct an underground railway. It was held that the railroad company did not acquire an easement, but a hereditament. In *Caldwell* v. *Fulton* it is said:

"There are two modes in which the subject-matter of the deed may be described, both equally potential. The one is by a description of the thing itself, as of land by

metes and bounds, or by a known name.   The other is by a designation of its usufruct, or of the dominion over it. Thus a grant of the rents, issues, and profits of a tract of land is uniformly held to be a grant of the land itself; * * * the reason is that the grant of a thing can be no more than the grant of the full and unlimited use of it."

When the right becomes exclusive, or where the whole exclusive use of a thing is obtained, the right becomes an interest, or the whole dominion passes, and there is no longer an easement, but the property is the thing itself. Exclusive use cannot be devised, and the land not.

If A., owning a 40-acre lot of land, with streets on its four sides, plats it, except a piece in the center, and the lots extend from the streets to such center piece, and he sells the lots, describing them as fronting upon such piece, and conveys to each lot owner an undivided interest in such center piece, to be used in common with all the others, as a park or for other purpose, he has clearly parted with all interest he had in the entire 40 acres.   Each grantee owns his lot and an undivided interest in the center piece.   All the lot owners must unite in improving or disposing of said center piece.   All may unite and divide it up, or all may unite in selling their lots to a single individual or corporation, and such grantee would take title to the entire 40 acres.

Counsel for the defendants insist that the terms of the conveyance clearly indicate the intention of the grantor to retain the fee of the land.   We think otherwise.   Mr. Ward knew that he was granting the unrestricted and perpetual use of this land as a resort or a park.   Had he desired to reserve the right to remove the soil, or any part thereof, naturally he would have incorporated such a right in his deed.   The language used is just such as is natural where one conveys to several the exclusive use of his land for the common enjoyment of all.   Neither complainant nor any other grantee would have purchased his lot without purchasing the interest in the beach.   Without the rights in the beach, as specified in the deeds, the lots are

comparatively worthless.    Complainant did not purchase his interest subject to the right of Mr. Ward to remove any part of the soil, sand, or gravel upon this beach, upon the theory that such removal would not injure the beach. He did not purchase it subject to the right of a court to determine that such removal was a benefit or injury to the beach.    The lot owners own the exclusive use of this beach, and they alone have the right to say what will be a benefit and what a damage thereto.    It is theirs to do what they please with it when acting in unison, but no one can use it for any other purpose except that specified in the deed, without the consent of all the others.

Decree reversed, and decree entered in this court for the complainant, with costs of both courts.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred.    HOOKER, J., concurred in the result.