LABRANCHE *v.* PERRON.

1. REFORMATION OF INSTRUMENTS—LAND CONTRACTS—MISTAKE—EQUITY.

Where, by mutual mistake, a land contract was executed, although the intent of the parties was merely to secure to the vendees therein an undivided one-half interest in the premises conveyed, they having advanced money to make the purchase, the court of equity will correct the instrument so as to make it express the actual agreement.

2. EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACT—MISTAKE.

In case of a mutual mistake in the execution of a written contract, evidence to show what the terms of the contract actually were, *held*, admissible, and not open to the objection that it tended to vary or contradict the terms of a written contract.

Appeal from Menominee; Flannigan (Richard C.), J. Submitted January 8, 1920. (Docket No. 39.) Decided February 27, 1920.

Relief from mistake at law as to effect of instrument as grounds for reformation of instrument, see note in 28 L. R. A. (N. S.) 785.

Bill by Louis Labranche against Menazip Perron and another for the reformation of a land contract. From a decree for plaintiff, defendant Perron appeals. Affirmed.

*John J. O'Hara* (*George W. Barstow*, of counsel), for plaintiff.

*N. C. Spencer*, for appellant.

SHARPE, J. There is very little dispute about the facts in this case. The plaintiff has a small store and sawmill in Menominee county. On November 25, 1913, two brothers, Celestine and Elginas Boissonneault, approached the plaintiff with the proposition that they go in together and purchase 13 forties of land belonging to one John Gasman. The purchase price was $14,500. The brothers paid to plaintiff $7,000, the advance payment required. Plaintiff saw Gasman and made the purchase, receiving a land contract, which acknowledged the payment of the $7,000 and provided for the payment of the balance in one and two years. The contract ran to plaintiff alone, as he explains, because the brothers were not there to sign. One of the brothers had gone to Canada for the money and sent it to the other, who paid it to the plaintiff. When the brother returned from Canada, there was talk about what security they had for the payment and plaintiff told his bookkeeper, Belanger, to give them a copy of the contract. Belanger prepared a contract, similar to that given by Gasman to plaintiff, from plaintiff to the brothers. They are all agreed that this was merely to be evidence that the brothers had advanced the $7,000 which was paid to Gasman and that they were each entitled to an undivided one-half interest therein. The parties did some lumbering on the lands but, owing to the failure of a company to whom they sold a considerable quantity of logs, the job was abandoned.

On July 23, 1918, the Boissonneault brothers approached the defendant to sell him their interest in the land. An option was prepared and signed by them, in which it is said:

"The interest of the parties of the first part in and to the said described premises is hereby represented to be one-half interest undivided."

Defendant had the right to purchase at any time within 60 days for the sum of $9,140. He had the land looked and took up the option. On making payment he secured from the brothers a quitclaim deed of the entire land. He then asserted his right to the entire interest, subject to the amount due Gasman, and offered to settle with plaintiff in that way.

Plaintiff then filed this bill, alleging, in substance, the facts as stated and asking that the contract given by him to the brothers be canceled and held for naught, that he be decreed to be the owner of a one-half interest, and that partition be had. Pending the trial, plaintiff had paid to Gasman the balance due under the contract and secured a deed to the lands. The defendant testified:

"I bought the interest of the Boissonneault brothers in the land contract that is here in evidence. I bought the right in that land contract—understanding that this land contract was the same as any other land contract and could be transferred, and that they had a right to sell it. I bought all the interest they had by quitclaim deed. They brought this contract down to me and told me that if Mr. Labranche didn't want to join with them in the sale, they had the right to sell the whole thing. I took it and went into possession of the land. * * * I had this option prepared, and in the option I received it was understood that the interest of the parties of the first part, who were the Boissonneault boys, in the premises was represented to be an undivided one-half."

No opinion was filed by the trial judge, but in the decree appears the following finding:

"The court  *  *  *  does find that the material allegations of said bill of complaint as amended have been sustained by clear and convincing proof; and it appearing to the court that the land contract heretofore on the 26th day of November, 1913, executed by the plaintiff to Celestine and Elginas Boissonneault, as described in said bill of complaint, was intended as security that the said plaintiff would pay to John Gasman the remaining portion of the purchase price of said lands, and that the plaintiff would convey an undivided one-half of said lands to said Celestine and Elginas Boissonneault; it further appearing to the court that the plaintiff has paid to the said John Gasman the remaining portion of the purchase price of said lands, and that the said lands have been by the said John Gasman duly conveyed to the plaintiff and it also appearing that the defendant Menazip Perron is purchaser and owner of all the right, title and interest at any time had or possessed by said Celestine and Elginas Boissonneault in and to said lands; thereupon,"

—followed by an order granting relief to plaintiff in accordance therewith. From this decree the defendant appeals.

The claim of the defendant, broadly stated, is that the court erred in admitting evidence to vary or contradict the terms of the written contract executed by plaintiff to the Boissonneault brothers and that, under the bill filed, the plaintiff is not entitled to the relief granted him in the decree. He insists that such evidence can only be admitted in case of fraud, accident, or mistake, and that no such claim is made in the bill of complaint, and that plaintiff's counsel made no such claim at the hearing.

The bill as amended alleges that the contract was given by plaintiff to the Boissonneault brothers as evidence of the fact that they were to have an undi-

vided one-half interest in the land and had advanced the $7,000 which had been paid on the contract. One of the prayers for relief is:

"That the aforesaid contract * * * be reformed so as to express the true intent of the parties."

While the word "mistake" may not have been used, and while plaintiff's counsel may have used language from which it may be inferred that he did not claim a mistake was made, it is apparent, as found by the trial judge, that the contract given by plaintiff to the brothers—

"was intended as security that the said plaintiff would pay to John Gasman the remaining portion of the purchase price of said lands, and that the plaintiff would convey an undivided one-half of said lands to said Celestine and Elginas Boissonneault."

This was the understanding of these parties, and the testimony satisfies us that it was so understood by the defendant at the time he secured the option.

We have here a case of mutual mistake. The parties do not differ as to their oral understanding. The rule by which courts of equity will place these parties just where they intended to place themselves is aptly stated in 4 Wigmore on Evidence, § 2417:

"This sort of mutual mistake can rarely occur in oral acts, but it is common enough in written acts. The case is the simple one of an oral agreement which, when reduced to writing for signature, contains terms varying from the actual understanding of the parties, but is nevertheless signed by them both in ignorance of the variance. No one appears ever to have doubted that in such cases the instrument should be judicially amended to represent the actual agreement."

The contract was in no way altered or reformed by the decree. The writing executed as evidence of the agreement of the parties was corrected so as to make it express what the parties actually agreed to. *Conlin*

v. *Masecar,* 80 Mich. 139; *Bush* v. *Merriman,* 87 Mich. 260; *Cutler* v. *Steele,* 93 Mich. 204; *Church* v. *Case,* 110 Mich. 621; *Johnson* v. *Wilson,* 111 Mich. 114.

The decree will be affirmed, with costs to plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.