## DOLSEN *v.* KEARNEY.

1. Reformation of Instruments — Mutual Mistake — Equity Jurisdiction.

   Where the evidence shows that the omission of a reservation in a contract was a mistake mutual to both parties, a court of equity has power to correct it by a reformation of the instrument so as to contain it.

2. Deeds—Reservations—Easements—Interest in Land.

   The reserved right to the exclusive use of such portion of the granted land as shall not at any time be needed by the grantee for floodage or in the water power operation, and also free access to the water in the pond, is not an easement, but an interest in the land itself, which may be sold or conveyed as any other interest.

Appeal from Wayne; Perkins (Willis B.), J., presiding. Submitted October 20, 1921. (Docket No. 157.) Decided December 21, 1921. Rehearing denied February 8, 1922.

Bill by Fred R. Dolsen against Thomas D. Kearney, administrator with the will annexed of the estate of Gideon P. Benton, deceased, Gideon C. Benton and others for the specific performance of a land contract. Defendants filed a cross-bill to have such contract reformed. From a decree for defendants, plaintiff appeals. Modified and affirmed.

*Henry C. Bogle,* for plaintiff.

*C. C. Yerkes* and *Cavanaugh & Burke,* for defendants.

SHARPE, J. In 1919, Gideon P. Benton owned a farm of about 100 acres in Northville township, in

Wayne county, bordering on the River Rouge. His son, Gideon Carmi Benton (hereafter called Carmi) one of the defendants, owned a farm in the section adjoining. Mr. and Mrs. Henry Ford were desirous of purchasing a part of Gideon's farm for a water power site and the floodage incidental thereto. Jay C. Hudson as their representative took the matter up with the Benton family. Gideon at that time was mentally incompetent. His wife and children were opposed to selling a part of the farm. Negotiations were had between Hudson and Carmi, which resulted in an agreement that Hudson should purchase the part desired for water power purposes at $200 per acre and Carmi the balance at $8,000. A division line was agreed on and a survey made in conformity therewith. It is Carmi's claim that it was agreed between Hudson and himself that he should have the use of any land included in Hudson's purchase which would not be flooded or used in connection with the purpose for which it was bought, and also free access at all times to the water in the pond created by the maintenance of the dam. An application was then made to the probate court of Washtenaw county and George J. Burke was duly appointed guardian of Gideon's estate. Hudson and Carmi then met Mr. Burke to close the deal. Carmi had not the money with him to make a down payment. The following writing, theretofore prepared by Mr. Hudson's attorney, was signed by Burke as guardian and delivered to Hudson:

"Northville, Michigan, July 26, 1919.
"Received of Jay C. Hudson, the sum of 500 dollars, to apply on the purchase price of the following described property, lying and being in the northwest quarter of section 11, town 1 south range 8 east, Northville township, Wayne county, Michigan, described as follows:"

(The premises are then described by metes and bounds.)

"The balance of purchase price, being 9,804.80 dollars to be paid in cash as soon as abstract is furnished showing good merchantable title, the cost of said abstract and proper conveyance to be assumed by us.

"Subject to the approval of the probate court of Washtenaw county."

On July 30, 1919, Carmi went to Burke's office, and a contract of sale was entered into between Burke as such guardian and himself for the sale of that part of the land he was to purchase. This contract contained the following provision:

"It is understood that the first party is selling the land lying to the north and west of the parcel herein described for water power purposes, and that the same, or a part thereof, will be flowed by a pond, the easterly and southerly line of which is approximately the northerly and westerly lines of the description contained herein, and it is understood that the second party hereto may have the use of such land as may lie between the southerly and easterly line of such pond and the northerly and westerly line of said description, but without in any way interfering with the use of such strip by the grantees thereof for the purposes for which it was conveyed; giving the grantee herein free access to such pond adjacent to the land herein described."

Gideon P. Benton died on March 28, 1920. The defendant Kearney was duly appointed administrator with the will annexed of his estate. The other defendants are his heirs at law.

On October 20, 1920, Hudson assigned all his interests in the written contract to Dolsen, the plaintiff herein, and he, on October 26, 1920, made offer to the administrator to pay the balance of the purchase money and demanded a deed of the premises. On the administrator's refusal, this bill of complaint was filed to compel specific performance. The administrator and Carmi in their answer asserted that the writing did not express the actual agreement between the

parties, and by way of cross-bill set up the negotiations relative to the purchase, the agreement as claimed by Carmi, and asked that the writing be reformed in accordance therewith. Other questions were raised in the answers of the other defendants but, as they are content with the decree as made, these need not be considered.

The trial judge filed an opinion, in which he found that neither Hudson nor Carmi would have made his purchase independent of the other, that the understanding between them was as claimed by Carmi, and that the guardian signed the writing without observing that it did not contain a reservation to Carmi of the use of the unflooded portion of the land described therein. The decree reformed the agreement to sell by inserting a clause reading as follows:

"That the above described land so sold is subject to an easement appurtenant to land this day sold to Gideon Carmi Benton, lying at the south and east, and described as follows:

(Here follows a description by metes and bounds of the land contracted to be sold to Carmi.)

"which easement shall give the use, to the owner of the parcel last described, of the strip of land which lies between it and the southerly and easterly line of the pond to be constructed on the land above sold to Jay C. Hudson, but without in any way interfering with the use of such strip by the grantee herein for the purpose for which it was conveyed, giving the owner of such southerly or last described parcel free access to the pond on the land herein agreed to be conveyed,"

and, as thus reformed, ordered specific performance of it. The plaintiff appeals.

Counsel for the plaintiff suggest that the only issue—

"made by the pleadings is a very narrow one, namely: was a mutual mistake made by the parties to the contract between George J. Burke, guardian, and Jay C. Hudson, the plaintiff's assignor?"

Mr. Hudson as a witness, after stating the negotiations leading up to the purchase, testified:

"The understanding was this, that the owner of the abutting land was to have the right of access and use of the water at all times. I told Carmi Benton that if the water happened to be down a foot in its head that he would have the right of access to the water notwithstanding that it was down a foot or up a foot, at all times. * * * When I said that the agreement was that the abutting owner should have the use of the water, I meant by that any property that was left out of the farm that wasn't purchased to be flowed would have the right of access to the water at all times."

He was then asked:

"*Q.* Why didn't you include in that some restriction, so that he would be protected in giving Carmi Benton a contract, including the right to the water on this piece?
"*A.* Never thought of it.
"*Q.* Should it have been there?
"*A.* I can't answer."

He further testified:

"I heard the contract read that was given by Burke, as guardian, to Carmi Benton.
"*Q.* Did you hear in that reading the clause that gives Carmi the right to take water from the pond?
"*A.* Yes, sir, reservation.
"*Q.* Did that express the true agreement between you and him?
"*A.* Practically, yes.
"*Q.* And it was a mistake, was it not, that it was not in the paper that Burke signed?
"*Mr. Bogle:* I object to that as calling for a conclusion. * * *
"If in that deed to Ford at that time these restrictions were placed, it would have complied with our oral agreement. * * * It wasn't his idea to deprive the people of anything, but give them greater facility to enjoy the privilege than they had.

"*Q.* And under those instructions you made this sale with Carmi Benton, in accordance with them?
"*A.* Yes, sir."

Mr. Burke testified:

"The reservation included in the contract prepared by Mr. Yerkes (Carmi's contract) was identical with the conversation had with Hudson.   *   *   *   The word 'easement' was not used, as I recall it.   He did state to Carmi he would have a perfect right to use the land and the water, and even spoke of putting crops in there, but added to Carmi Benton: 'But, of course, Benton must understand the use of the land must not interfere with the flow on the land.'"

There thus seems to be no dispute but that the minds of the parties were in agreement when they went to Mr. Burke to close the deal.   Carmi was to have the use of all of the land included in the Hudson purchase which would not be overflowed or used in connection with the water power operation, and free access to the water in the pond.   The nature of their agreement was a matter of no concern to Mr. Burke. He was interested only in securing to the estate the purchase price agreed upon.   It was unfortunate that the contracts to sell were signed by him at different times.   Had Carmi been present at the time Hudson's contract was signed, he would doubtless have insisted that both contracts contain similar provisions.   The testimony of Mr. Burke fairly establishes the fact that he would not have signed the Hudson contract without inserting therein a provision similar to that in Carmi's, had his attention been called to it.   It also quite clearly appears that Mr. Hudson would have had no objection to its insertion had it been asked for. Its omission was therefore a mistake, mutual as to both parties and one within the power of a court of equity to correct by a reformation of the instrument so as to contain it.   The exercise of such power has

216—Mich.—43.

been approved of by this court in many cases. The following are illustrative: *Osterhout & Fox Lumber Co.* v. *Rice*, 93 Mich. 353; *Burns* v. *Caskey*, 100 Mich. 94; *Fero* v. *Lumber Co.*, 101 Mich. 310; *Johnson* v. *Wilson*, 111 Mich. 114; *Fitch* v. *Vatter*, 143 Mich. 568; *Labranche* v. *Perron*, 209 Mich. 239.

Plaintiff complains that the relief granted in the decree gives Carmi other and greater rights than those secured to him in his contract with Burke. By the terms of Carmi's contract he was to have the right to use all the lands included in Hudson's purchase not flooded or required for use in the water power operation and also free access to the water in the pond. At first blush, the former might seem to include the latter. But these rights are distinct and really bear no relation to each other. Plaintiff or his grantees might erect a wall or other obstruction at the water's edge without a violation of that first stated. Under the latter, such an act, unless necessary to the operation of the water power plant, would not be permitted. The rights of Carmi are measured and must be determined by the language employed in his contract with Burke. The contract with Hudson should be reformed by inserting therein language of similar import. The use of the word "easement" was unfortunate and should not have been used. The use of the land secured to Carmi is not an easement. The contract as reformed and that executed to Carmi give to him the exclusive use of such portion of the land described in plaintiff's contract as shall not at any time be needed for floodage or in the water power operation. Such exclusive use is not an easement, but an interest in the land itself, which may be sold or conveyed as any other interest. *Cram* v. *Ward*, 137 Mich. 423. There is no apparent hardship to plaintiff or those whom he represents by this holding. The floodage rights were all they desired. This is secured to

them as is also the right to the use of this strip of land, if there be any, for any purpose incidental to the use of the entire land conveyed for water power purposes.

The defendants question the sufficiency of the probate proceedings had on the application of the guardian for leave to sell. The court below decreed specific performance of the contract as modified. The defendants did not take an appeal. This question is therefore not before us for consideration.

The decree will be modified by reforming the contract to Hudson to include language of similar import to that in the contract from Burke to Carmi and, as thus modified, affirmed. In our opinion, no costs in this court should be allowed.

STEERE, C. J., and MOORE, WIEST, STONE, and CLARK, JJ., concurred. FELLOWS and BIRD, JJ., did not sit.