## ANIBA v. BURLESON SANITARIUM.

REFORMATION OF INSTRUMENTS—LEASES—LANDLORD AND TENANT—
LEASE REFORMED IN ACCORDANCE WITH INTENTION OF PARTIES.

Where a renewal lease provided that the leased premises should be used for a confectionery and manufacturing store, and "for no other purpose whatever," although lessor knew that lessee lived in said premises and also maintained a small cigar case for the sale of cigars in connection with his confectionery business, and both intended that such uses should continue and be permitted in the new lease, the court below properly decreed the reformation of the lease to permit of said uses; but the decree is modified, on appeal, to restore the words "for no other purpose whatever," after being reformed in accordance with the intention of the parties.[1]

Appeal from superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted October 14, 1924. (Docket No. 85.) Decided December 10, 1924.

Bill by Arthur A. Aniba against the Burleson Sanitarium and another for the reformation of a lease. From a decree for plaintiff, defendant Burleson Sanitarium appeals. Modified and affirmed.

*Howard A. Ellis* and *Fred P. Gieb*, for plaintiff.

*Charles G. Turner* and *Harry E. Rodgers*, for appellant.

BIRD, J.    Plaintiff filed his bill in the superior court for the city of Grand Rapids, praying for a decree reforming a certain lease made with the defendant Oltman, and afterwards assigned by him to the Burleson Sanitarium.    From a decree granting the relief sought defendant Burleson Sanitarium appeals.

[1]Reformation of Instruments, 34 Cyc. p. 988.

We have carefully considered the testimony upon which the chancellor based the decree for plaintiff, and are so nearly in accord with his statement of the case and his conclusions that we adopt it as the opinion in the case, with some slight modification, which will be referred to later:

"For some 12 years prior to the commencement of this suit, defendant Oltman was the owner of certain real estate at the southwest corner of Fulton street and Jefferson avenue, in the city of Grand Rapids, Michigan, said property being known as No. 1 Jefferson avenue and No. 154 Fulton street east.   On the property is an old residence, the lower floor of which was remodeled into stores fronting both upon Jefferson avenue and Fulton street.

"About 12 years ago plaintiff rented said premises from defendant Oltman and continued to rent the same down to and including the 14th day of January, 1922, at which time the lease in question was entered into between plaintiff and said Oltman.   There had been three similar leases prior to the lease of January 14, 1922, but none of the former leases were produced at the trial.

"The lease in question contained a provision that the premises rented were, 'to be occupied for a confectionery and manufacturing store and for no other purpose whatever.'   The words 'to be occupied for a confectionery and manufacturing store' were written into the lease in long hand but the words 'and for no other purpose whatever' were a part of the printed form. The lease is dated May 1, 1922, and expires the 1st day of May, 1929, the rent stipulated for the term being the sum of $24,600.

"At the time this lease was executed, plaintiff had used the premises in question as a residence for himself openly and notoriously and with the knowledge and consent of defendant Oltman since the time the first lease was entered into.

"Plaintiff is permanently crippled, his body being paralyzed from the hips downward in such a manner that he cannot get about at all except with crutches, and then only in the most laborious manner.   He is unable to lift either limb, although he can sustain

some weight upon his feet.    His condition is such that it is practically necessary for him to live in the same building where he conducts his business.

"After living for some years upon the ground floor of the premises rented from defendant Oltman, plaintiff's business had increased to such an extent that he desired to use the whole of the ground floor for store and manufacturing purposes and to have his living quarters upstairs.    By mutual agreement between himself and said Oltman, the latter installed a small elevator in the building with the distinct purpose of enabling plaintiff more readily to go back and forth between his living quarters on the second floor and the first floor and basement, and for the past four or five years plaintiff has lived upstairs in the house.

"I find that at the time the last lease was executed the defendant Oltman knew and understood that plaintiff was living in the premises and had lived there for many years, and that plaintiff desired and intended to continue to live there.

"I further find that plaintiff would not have made the lease in question at all had he realized that he was not permitted to live in the premises.

"I further find that defendant Oltman intended and desired that plaintiff should live in the premises, and knew that plaintiff rented them in part for living purposes, and in part paid his rent for those purposes. At the time the last lease was executed the minds of defendant Oltman and of the plaintiff were in agreement upon plaintiff's right to live in the premises, and plaintiff promised to pay rent and defendant Oltman promised to receive it with the understanding that it was paid in part for plaintiff's right to live in said premises.

"While there was no provision written into the lease in express terms giving plaintiff the right to live upon the premises, I find that it was understood between the parties that plaintiff should live there, and the provision permitting him to live there was overlooked by both parties.

"The lease as drawn up and signed did not, therefore, contain their full understanding or agreement regarding the uses of the premises in question, and the lease as drawn was, therefore, not the agreement and understanding between the parties at the time.    While

there was no spoken words exchanged between them at the time the last lease was executed evidencing an agreement that plaintiff should continue to have the right to live in the premises, nevertheless, such an agreement is clearly established by the facts and circumstances surrounding the transaction.

"Some months after this lease was executed, the defendant Oltman sold the premises in question to one S. R. Fletcher, who in truth and in fact was acting as the undisclosed agent and representative of the defendant Burleson Sanitarium; and at the same time said lease was assigned to said Fletcher and by him to said last named defendant.

"At the time said Fletcher bought this property for the Burleson Sanitarium, plaintiff was openly and notoriously occupying the premises in question, partly for living purposes; and the defendant Burleson Sanitarium not only had constructive notice of such occupancy, but also had actual notice of the same. The offices of the Burleson Sanitarium were directly across from and within a few feet of that part of the premises occupied by plaintiff as his living quarters; and no officer of the defendant sanitarium who ever used its offices could possibly have failed to notice that plaintiff was living on the premises in question.

"I further find that at the time said sanitarium acquired title through its agent, said Fletcher, it had both actual and constructive notice of the fact that plaintiff was maintaining and had for sometime maintained a small cigar case in his store on said premises from which he sold cigars to customers.

"Since the Burleson Sanitarium has acquired title to said property it has threatened to evict plaintiff because of the fact that he occupied a portion of the premises as living quarters and because he maintained said cigar case, it being claimed by said defendant that these two matters constitute breaches of the portion of the written lease hereinbefore quoted.

"Not only is it true that said sanitarium must have known that plaintiff was both occupying a portion of said premises as living quarters and that he was selling cigars, but it is also true that both of these uses which plaintiff has made of the premises are merely incidental to his use of the premises for the purposes stated in the written lease.   It very often happens

that the proprietor of a store building occupies a portion of it for living purposes; and the sale of cigars in confectionery stores is so common that it may well be said to be a part of the confectionery business.

"At the time that the Burleson Sanitarium purchased these premises and took an assignment of plaintiff's lease, it was certainly their intention that he should be permitted to remain in said premises during the term of said lease, and they purchased the property knowing that plaintiff expected to continue so to occupy during the term of his lease.

"No one would have the temerity to accuse men of such high standing in the community as the officers of the Burleson Sanitarium with the secret intention to oust plaintiff from the premises upon the slightest pretext. Yet both of these alleged breaches are of no concern whatever to the defendant sanitarium; they injure it in no way whatever. The alleged claim that the use by the plaintiff of a part of these premises for living quarters depreciates the value of the property is without foundation. Many of the buildings in the same vicinity are used partly for business purposes and partly for living purposes. And the sale of cigars by plaintiff is not in competition with the cigar stand operated by the sanitarium in its adjoining building, as said sanitarium is semi-private in its nature and not entered by the general public for the purpose of purchasing cigars, its cigar stand being operated solely for the convenience of its patients.

"The law does not favor forfeitures, and even though the alleged breaches upon which defendant sanitarium bases its claim to avoid this lease actually are technical violations of the strict terms of the lease, they are not such violations as would justify a court of equity in declaring what will amount to a forfeiture of plaintiff's rights.

"I am, therefore, forced to the conclusion that the material allegations in plaintiff's bill of complaint are true and plaintiff, therefore, entitled to the relief therein prayed.

"The injunction heretofore issued should, therefore, be extended and continued throughout the unexpired portion of plaintiff's lease. The allegations of the cross-bill of defendant Burleson Sanitarium are not

sustained, and said cross-bill should, therefore, be dismissed with costs to be taxed in favor of the plaintiff.

"The defendant Oltman was merely a nominal defendant and the bill of complaint has already been dismissed as against him, and he should be permitted to tax his costs against the plaintiff."

In reforming the lease so that it would conform to the agreement and intention of the parties, the words "for no other purpose whatever" were eliminated. We think these words should be reinstated so that the decree will read as follows:

"to be occupied for a confectionery and manufacturing store and for living quarters for plaintiff, and for any other purpose incident thereto, but for no other purpose whatever."

The case of *Dolsen* v. *Kearney*, 216 Mich. 668, recently decided by this court, is an instructive case on the questions here involved, and fully justifies the conclusions reached by the chancellor.

The decree will be affirmed with costs to the plaintiff.

SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.    CLARK, C. J., and McDONALD and STEERE, JJ., concurred in the result.