KELLY v. ISRAEL.

1. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—TESTIMONY OF MUTUAL MISTAKE SHOULD BE CONVINCING.

Before the court will reform a written contract on the ground of mutual mistake, the testimony should convince it that the contract should be reformed in order to carry out the agreement of the parties.

2. SAME—LAND CONTRACTS—EVIDENCE SUFFICIENT TO JUSTIFY RELIEF BY INSERTING INTEREST CLAUSE.

In a suit by the vendor to reform a land contract by inserting a clause requiring the payment of six per cent. interest on the deferred payments, the testimony and circumstances shown in the instant case, *held*, to justify the decree of the court below granting the relief prayed unless the purchaser elected to rescind the contract.

Appeal from Wayne; Mandell (Henry A.), J.   Submitted June 16, 1926.   (Docket No. 92.)   Decided February 4, 1927.

¹Reformation of Instruments, 34 Cyc. p. 984; ²Id., 34 Cyc. p. 984; 23 R. C. L. 327; 3 R. C. L. Supp. 1324; 4 R. C. L. Supp. 1500; 5 R. C. L. Supp. 1240.

Bill by Henry M. Kelly and another against Morris Israel and another to reform a land contract.    From a decree for plaintiff, defendants appeal.    Affirmed.

*Patrick H. O'Brien* and *Kelly, Kelly & Kelly,* for plaintiffs.

*Mayer, Ruby & Joachim* (*Leopold D. Mayer,* of counsel), for defendants.

STEERE, J.    This case was commenced November 7, 1924, to reform a land contract dated October 1, 1924, by inserting a clause requiring the payment of six per cent. interest on the deferred payments mentioned therein.    The trial judge granted the relief prayed unless defendant elected to rescind the contract.    The defendant brings the case into this court by appeal, insisting there was no mutual mistake made in the execution of the contract and that the court was not justified in making the decree he did.    On September 11, 1924, the defendant signed a written offer to buy the property involved here

"for the sum of sixteen thousand ($16,000.00) dollars. The terms of the sale is to be as follows: Two thousand dollars as first payment, balance to be paid at one hundred and ten dollars or more per month, including interest."

This offer was communicated to the plaintiff and declined by him.

The parties met in plaintiff Kelly's house September 17, 1924, and discussed the situation.    Kelly testified in part:

"I said to him, 'Well, Mr. Israel, you want to buy my flat, I understand,' and he said, 'Yes.'    I said, 'Your proposition is $16,000, as I understand, $2,000 down, and $500 to be paid on the delivering of our preliminary agreement and the balance at $110 a month, with all deferred payments drawing in six per cent. to be payable in monthly installments;' he said, 'Yes.'    I said,

'There are certain other features that we must discuss, so that you may be thoroughly familiar with it.' I reviewed the several situations which are enumerated in our contract, including our final contract."

His explanation of the omission of the interest clause is in substance that he used a Union Trust Company form of contract, and that the blank spaces were not large enough to contain the provisions they had agreed upon about the insurance, taxes, etc., and that it was necessary to typewrite considerably in lieu of the printed form and that he ran his pen through one page of the printed form without noticing that the provisions for interest were all on that printed page with one exception which will be referred to later.

Plaintiff had several witnesses whose testimony tended to establish his contention. Israel was called by the plaintiff as an adverse witness, and testified in part as follows:

"*Q.* How much did he say that the house would cost you? Can you answer that question?
"*A.* Well, sixteen.
"*Q.* $16,000?
"*A.* I don't know.
"*Q.* Was it $16,500?
"*A.* No, $16,000.
"*Q.* $16,000?
"*A.* Yes.
"*Q.* How were you to pay for it? How much down?
"*A.* $2,000 down.
"*Q.* How did he say that you were to pay the balance?
"*A.* It was $110.00 a month. Yes. $115, I think it was.
"*Q.* What did he say about interest?
"*A.* Nothing. Mentioned no interest.
"*Q.* No mention of interest?
"*A.* Yes.
"*Q.* Did you finally sign a paper with regard to it?
"*A.* Yes.
"*Q.* Did you make the proposition yourself?

"*A.* Mr. Kelly and Mr. Bockall made the proposition there.

"*Q.* I will ask you if this is your signature on Exhibit 1?

"*A.* That is my signature; right here (indicating)."

This exhibit is the one of September 11, 1924, from which we have already quoted.

Israel was examined at great length and his testimony does not impress us with his candor or his willingness to tell what he remembered about the transaction. No other witness was sworn on the part of defendant. Attached to the final contract was a lined page of the Union Trust Company form headed in part as follows:

| Received Payment of the Within Contract as Follows: | | | | | |
|---|---|---|---|---|---|
| DATE | Principal Payments | Balance of Principal | Interest Payments Rate of 6 % | Paying Interest to | SIGNATURE |
|  |  |  |  |  |  |
|  |  | . |  |  |  |

Before the contract was signed Kelly filled in the interest payment rate column by inserting with a pen the figure "6" in both his copy and the one given to Israel.

We deem it extremely improbable that Kelly sold real estate for $16,000, received a down payment of but $2,000 and agreed that the balance of $14,000 might be paid in monthly installments of $115 without requiring interest on the deferred payments. It is true that before the court will reform a written contract on the ground of mutual mistake the testimony should convince the court that the contract should be reformed in order to carry out the agreement of the parties. *Conlin* v. *Masecar,* 80 Mich. 139; *Bush* v. *Merriman,* 87 Mich. 260; *Kimble* v. *Harrington,* 91 Mich. 281; *Judson* v. *Miller,* 106 Mich. 140; *Johnson*

v. *Wilson,* 111 Mich. 114; *Newland* v. *Baptist Church Society,* 137 Mich. 335; *Labranche* v. *Perron,* 209 Mich. 239; *Lee State Bank* v. *McElheny,* 227 Mich. 322; *Schoenfield* v. *Veenboer,* 234 Mich. 147.

The testimony and the circumstances shown in the instant case clearly satisfy us that the decree of the court below was fully justified.

Decree will stand affirmed, with costs to appellee.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.