FRICK *v.* HOLCOMB.

Reformation of Instruments—Deeds—Notice of Servitude—Inadvertent Omission.

> On grantor's cross-bill for .the reformation of a deed, where the proofs warrant the finding of the court below that the grantees were chargeable with notice of the flowage rights of a power company, and that they had actual knowledge of the existence of the water conditions on the land, and the proofs also disclose that the failure to except such servitude from the warranty of title was due to inadvertence at the time the deed was prepared, the decree of the court below reforming the deed so as to convey the land subject to such flowage rights was justified.

Appeal from Alcona; Widdis (Albert), J. Submitted January 5, 1928. (Docket No. 60.) Decided February 14, 1928.

Bill by George G. Frick and another against Jennie Holcomb for the rescission of an exchange of real property. Defendant filed a cross-bill to reform the deed to plaintiffs. From a decree dismissing the bill and granting the prayer of defendant's cross-bill, plaintiffs appeal. Affirmed.

*Herman Dehnke,* for plaintiffs.

*L. G. Dafoe,* for defendant.

Sharpe, J. On October 30, 1925, the plaintiffs conveyed certain real estate owned by them in the city of Flint to the defendant in exchange for a farm property then owned by her in the county of Alcona. On November 5, 1926, they filed their bill of complaint herein, praying for a rescission of the transaction and the restoration to them of the property conveyed. The

Reformation of Instruments, 34 Cyc. pp. 910, 931.

trial court entered a decree dismissing their bill, from which they appeal to this court.

The deed executed by defendant was a statutory short form warranty.    Her farm property, however, was subject to certain flowage rights, secured to the Alpena Power Company under decree of this court. *Holcomb* v. *Alpena Power Co.*, 198 Mich. 165, 215 Mich. 382.    In this decree the power company was granted permission to maintain a dam at the outlet of Hubbard lake to the height of six and one-half feet on payment to Holcomb of the permanent damages to his land occasioned by the flooding thereof due thereto, which were fixed and determined therein.    Defendant's farm was subject to this servitude at the time she deeded it to plaintiffs, but no mention of it was made in the conveyance.

In a cross-bill accompanying her answer, defendant prayed for reformation, and the deed was "ordered corrected" by inserting therein a provision that it was given "subject to all the rights of easements and servitudes on said lands, decreed the Alpena Power Company."    If the proofs justified such reformation, plaintiffs may not have rescission.

The trial court found that plaintiffs "were chargeable with notice of the contents" of the decree entered in the power company case, and had actual knowledge of the "existence of the water conditions, by plaintiffs' personal examination and inspection" of the premises before the exchange of properties was consummated. In our opinion the proofs warranted this finding, and also disclose that the failure to except such servitude from the warranty of title was due to inadvertence at the time the deed was prepared.    The negotiations which led up to this exchange of properties were begun by defendant's daughters, who lived in Flint and who were anxious to have their mother there with them. They took the matter up with a real estate agency

241—Mich.—37.

who had been acting for plaintiffs in an effort to sell or exchange their property. One of the daughters looked over plaintiffs' property, and she and the agents, Mr. Hudson and Mr. Torrey, and the plaintiffs went up to the home of defendant in Alcona county to look over her property. Up to this time defendant had had nothing to do with the deal. Mr. Frick and the real estate men and a neighbor, who had knowledge of the boundary lines, went over the farm. The dam was then maintained at a height of six and one-half feet, and the part of defendant's farm affected thereby was in clear view, and apparent to them all. After some time thus spent, Hudson asked Frick if he had any proposition to make. He replied, "it ain't as good as I expected," but finally said that he would conclude the deal as it had been talked in Flint if his wife was satisfied, provided defendant would also convey an adjoining 40 acres which she owned, making 200 acres in all. Mr. Torrey, in answer to a question as to the reason given by Frick for wanting the additional 40 acres, said:

"He figured the worked land on the 160 would not include more than 60 acres. That 40 was of good quality. It would take that to have enough land for his farm."

Frick then talked with his wife and said it was all right; for them to see defendant and "if it was all right he would deal with her." The proposition was then put up to defendant, and she declined to include the 40. She, however, accompanied them to Flint, and the deal was there consummated by including the 40 acres in the deed to plaintiffs.

Soon after plaintiffs arrived at the farm, they had dinner with the defendant at her home thereon. She and her daughter and the two real estate men all testified that the flooding of the land by the power company's dam was there discussed. Torrey testified

that defendant "said that it affected all the low land. * * * She told us they had a lawsuit and they could raise the water to six and one-half feet." Hudson testified that at that time Mr. Frick asked, "Is that low land down there any good?" and defendant answered, "Well, the low land, swamp land, isn't very much good. It wouldn't be any good for farming purposes. She says the water does back up there. * * * She said they had trouble with the power company, had a lawsuit with the power company, and had got damages for what damages the water had done there. They had the right to put a dam across the lake to raise the water to a certain number of feet, six feet and a half, I think she said." He further testified that when looking the property over they found a part of it "was real swampy, * * * quite a lot of marsh. * * * We walked around on top of the bogs to keep out of the water all we could. Mr. Frick was along with us."

Defendant's daughter testified that in the conversation in the house defendant told plaintiffs "that they had had two lawsuits. There was another lawsuit and they wanted the dam taken out, but they couldn't do that. So it was settled that they could raise the water six and one-half feet." This testimony but corroborated that of the defendant. While it may be said to be denied by the plaintiffs, we think the finding of the trial court that plaintiffs were chargeable with notice of the effect of the decree, which was duly recorded and under which the power company had secured the right—

"to maintain its dam at Hubbard lake to the height and depth of six feet and six inches, and to impound the water, and to back up the waters of Hubbard Lake behind its dam to said height and depth aforesaid, and that such right of servitude was decreed to said Alpena Power Company for all future time"—

was warranted.

The deed from defendant was prepared by one of the real estate men.   Had a competent attorney, informed of the facts, been employed to do so, there can be no doubt that he would have excepted from the warranty of title the rights secured to the power company under its decree.   In our opinion the action of the trial court in reforming the deed in this respect was fully justified.   *Kelly* v. *Israel*, 237 Mich. 526, and cases cited.

The decree is affirmed, with costs to appellee.

North, Fellows, Wiest, Clark, and McDonald, JJ., concurred.

Chief Justice Flannigan and the late Justice Bird took no part in this decision.