93   353
.101   313

## THE OSTERHOUT & FOX LUMBER COMPANY v. WILLIAM R. RICE.

*Equity—Mistake—Reformation of contract.*

Complainant sold 40 acres of land to defendant on contract, reserving the hemlock timber.  There was a quantity of pine timber on the land, which complainant removed without objection from defendant.  After such removal, defendant sued complainant for the value of the timber, and complainant filed a bill to correct an alleged mistake in the contract, in that it failed to reserve the pine timber, and to enjoin the prose-

93 MICH.—23.

cution of the suit at law; and a decree granting the relief prayed for is affirmed.

Appeal from Lake.    (Judkins, J.)    Argued October 12, 1892.    Decided October 27, 1892.

Bill to correct a mistake in a land contract, and to enjoin the prosecution of a suit at law.    Defendant appeals.  Decree affirmed.    The facts are stated in the opinion.

*Uhl & Crane,* for complainant, contended:

1. The words "pine and" were omitted by the mistake of both parties to the contract, so that the intention of neither is expressed in it.
2. But, if these words were not omitted by *mutual* mistake, they were omitted by the mistake of the complainant, by which its intention failed of a correct expression, and there was fraud on the part of the defendant in taking advantage of that mistake, and in obtaining a contract with a knowledge that the complainant was in error in regard to its terms.    This entitles the complainant to the relief prayed; citing *Gillespie v. Moon,* 2 Johns. Ch. 585; *Welles v. Yates,* 44 N. Y. 525; *Kilmer v. Smith,* 77 Id. 226; *James v. Cutler,* 54 Wis. 172; *Bush v. Merriman,* 87 Mich. 260; *Coal Co. v. Doran,* 142 U. S. 417, 435.

*C. A. Withey,* for defendant, contended:

1. The bill in no way or manner claims that the alleged mistake it seeks to have corrected was the result of defendant's fraud, nor does it state or claim to state any facts showing such to be the case; hence that question is not before the court, and cannot be considered by it, even though the defendant's answer or the evidence, or both, make a case of fraud, the doctrine being plain, simple, and uniform that complainant can have relief only upon his bill and the case made by it; citing *Thayer v. Lane,* Walk. Ch. 200, and cases cited at page 205; *Jerome v. Hopkins,* 2 Mich. 100; *Cicotte v. Gagnier,* Id. 389; *Warner v. Whittaker,* 6 Id. 133; *Bloomer v. Henderson,* 8 Id. 395; *Wurcherer v. Hewitt,* 10 Id. 453; *Dunn v. Dunn,* 11 Id. 284; *Perkins v. Perkins,* 12 Id. 456; *Moran v. Palmer,* 13 Id. 367; *Converse v. Blumrich,* 14 Id. 109; *Hubbard v. Winsor,* 15 Id. 146; *Payne v. Avery,* 21 Id. 524; *Ford v. Loomis,* 33 Id. 121; *Connerton v. Millar,* 41 Id. 608; *Matson v. Melchor,* 42 Id. 477.

MONTGOMERY, J. The bill in this case is filed to correct a mistake in a written contract for the sale of certain land in Lake county, and for an injunction to restrain proceedings at law which have been instituted by the defendant to recover the value of pine timber removed from the land by the complainant after the making of the contract in question.

The bill alleges that the complainant entered into a parol agreement to sell the land in question for eight dollars an acre, reserving the pine and hemlock timber, and agreed to make a written contract; that, in pursuance of this agreement, the contract was reduced to writing, with the intent on the part of the complainant to sell, and of the defendant to buy, the land with the timber reserved to complainant; that, by mistake in the writing relating to the reservation, the word "pine" was omitted, so that the contract as executed does not conform to the intention of the parties. The defendant, by his answer, denies that by the oral agreement the pine was reserved, and denies that any talk occurred relating to a reservation of the pine timber.

The circuit judge heard the testimony in open court, and decreed the relief prayed for.

The defendant appeals, and in this Court contends that, while the testimony offered by complainant tends to show that there may have been a mistake on the complainant's part as to the condition of the property when the contract of sale was made, it does not show a mistake or error in drafting the contract. The defendant's contention is that the evidence shows that the complainant understood that all the pine was cut off, and therefore, so far from attempting to reserve the pine, deemed that there was no necessity for such a reservation; and that, while the defendant may have known that the complainant was laboring under a mistake as to the state of the property, yet, as he was acting in no fiduciary relation, or any other imply-

ing trust and confidence, but was dealing with complainant at arm's length, he was not bound to apprise complainant of its mistake;[1] that there was in fact about 500,-000 feet of pine on the 40, and that the title passed to the defendant by the sale. And, further, that, if there was a mistake made in drafting the instrument, it was not a mutual mistake, and that the averments of the bill cannot be supported by showing that the complainant understood that the contract contained a reservation of the pine, if it appears that the defendant knew that the contract contained no such reservation, and also that the complainant was acting under the mistaken belief that such a reservation was embodied in the instrument; that, in such a case, while relief might be granted on the ground of fraud, it cannot on a bill which avers mutual mistake.

Both contentions of defendant are answered by the facts, to wit: It appears by the testimony that defendant had previously purchased an adjoining 40 of complainant, and that it reserved the pine timber, and that it was complainant's custom in making sales of land to do so; that W. A. D. Rose was complainant's foreman at Deer Lake, but not authorized to sell land; that in November, 1887, he wrote complainant as follows:

"Please give me your price per acre for the south-west quarter of the south-west quarter of section 1—18—11, pine off. Riley Rice wants this."

On November 5, 1887, Mr. Fox, treasurer of the complainant, in reply to this letter, wrote Mr. Rose:

"You may quote price of south-west quarter of south-west quarter of section 1—18—11, at eight dollars per acre; we reserving all pine timber."

---

[1] Counsel cited in support of this contention Cooley, Torts, 474, 487; Benj. Sales, §§ 429, 447-450: *Manning v. Albee*, 11 Allen, 522; *Medbury v. Watson*, 6 Metc. 256; *Brown v. Castles*, 11 Cush. 350; *Merwin v. Arbuckle*, 81 Ill. 501; *Brown v. Leach*, 107 Mass. 364, 368.

The evidence further shows that this was the sole authority Mr. Rose had. Mr. Rose testified that the sale was made in accordance with these instructions, and that in the oral agreement the pine and hemlock were reserved. The contract was drawn at Grand Rapids; and Mr. Osterhout, who executed it on the part of the complainant, has since deceased. The defendant, after receiving this contract, permitted the complainant to go on and lumber off the pine, and made no question about its right to do so. In 1889 the defendant directed the assessor not to assess the land to him, stating that he had got $70, or a little better, for what he had paid in, and it was not worth a hen an acre, and he could not pay for it.

One Charles H. Monroe was called as a witness for complainant, and testified as follows:

"Mr. Rice told me that if he had been sharp enough he might have had about a quarter of a million of pine that was on this 40.

"Q. What reason did he give for saying that he could hold it?

"A. That the pine was not reserved in the contract.

"Q. In that conversation, did he state when he first learned that the pine was not reserved?

"A. Well, he said he didn't know that it was not reserved until, I think it was Mr. Bush, called his attention to it."

This testimony tended very strongly to support complainant's claim that it understood that the pine was reserved, and also that the defendant so understood at the time the contract was executed. The conduct of defendant, as shown by his own testimony, strongly corroborates the complainant's theory. He testified as follows:

"Q. Did you notify the company at Grand Rapids that they were taking off your pine?

"A. No, sir.

"Q. Did you notify Mr. Bennett not to cut off any pine?

"A. No, sir; I didn't.

"*Q.* So that they were at work there for six weeks, to your knowledge, taking off the remainder of that pine?

"*A.* Yes, sir.

"*Q.* And you never notified any officer of the company?

"*A.* No, sir.

"*Q.* But allowed it to take off the pine without a word of objection from you? Why did you do that?

"*A.* Because I thought I would let them, and see what they would do. I reckoned they wanted the timber, and knew what they wanted to do with it."

It is not surprising that the learned circuit judge, in view of this testimony, found that there was a mutual mistake at the time this contract was executed, even though the defendant put forth the claim that he knew, when he signed the agreement, that it did not contain a clause reserving the pine, especially when the defendant had asserted in his answer that in the oral negotiations preceding the execution of the contract nothing was said about the reservation of the pine timber, although the weight of the credible testimony in the case showed that the pine timber had been reserved. There was ample testimony in the case to support the averments in the bill, and sufficient in defendant's course of conduct to discredit him.

The decree of the court below will be affirmed, with costs.

McGRATH, C. J., LONG and GRANT, JJ., concurred. DURAND, J., did not sit.