## SAGINAW SUBURBAN RAILWAY CO. *v.* CONNELLY.

1. PROPERTY—OWNERSHIP—EVIDENCE—SUFFICIENCY.

   On the issue as to the ownership of certain rails sold by the president of a suburban railway company in his individual capacity, evidence examined, and *held*, to support a decree establishing title in the corporation as against the claim of the president that they were his individual property.

2. SAME—BONA FIDE PURCHASER.

   A purchaser of railroad rails from the president of a railroad company in his individual capacity, the rails being in the possession of the company, fastened to the ties upon its roadbed, cannot claim title to the rails as against the company, on the ground that he is a good faith purchaser.

3. ESTOPPEL—PLEADING—NECESSITY.

   An estoppel in pais must be pleaded.

4. APPEAL AND ERROR—REVIEW—RULING BELOW.

   A case will not be reversed because a wrong reason was given by the trial court for a proper conclusion.

5. SAME—DISCRETIONARY RULINGS—NEW TRIAL.

   A ruling of the trial court in a chancery case on a motion for a rehearing, on the grounds of surprise and newly-discovered evidence, will not be reviewed by this court unless an abuse of discretion clearly appears.

Appeal from Genesee; Wisner, J. Submitted February 16, 1906. (Docket No. 187.) Decided November 13, 1906.

Bill by the Saginaw Suburban Railway Company against John E. Connelly to enjoin the removal of certain rails. From a decree for complainant, defendant appeals. Affirmed.

*Black & Roberts*, for complainant.

*James H. Davitt*, for defendant.

McALVAY, J. Complainant, a Michigan corporation organized under the train railway act for the purpose of

constructing a railway between Flint and Saginaw, filed its bill of complaint against defendant, setting forth, among other things, that, after its organization, it proceeded to construct an electric railway by making a certain amount of grade and putting thereon ties and steel rails; that, after this labor had been performed and expenditure for materials made, the work of construction was suspended; that in May, 1903, George Silsby was deposed from his office as president of said road and Arthur G. Bishop elected in his place; that on January 26, 1904, defendant John E. Connelly caused to be filed in the office of the city clerk of Flint a bill of sale executed by said Silsby in his individual capacity to said defendant January 6, 1903, purporting to convey to him 155 60-pound T rails, the property of complainant, a large part of which rails had already been laid in the track upon its roadbed in the townships of Genesee and Burton, Genesee county; that this sale was made without any authority whatever, and without consideration to complainant; that complainant had no knowledge that such bill of sale had been made until after it was filed as above stated; that defendant, claiming said property under said bill of sale, on May 24, 1904, entered upon the roadbed of complainant in the said townships and proceeded to tear up and remove a large quantity of the railroad iron from said track and procured the same to be drawn to the Pere Marquette Railroad for the purpose of shipping the same away; that defendant threatens to tear up and carry away all of said rails now on complainant's roadbed and take the same from its possession and convert the same to his own use. An injunction was prayed for and issued, damages were asked to be assessed on account of tearing up and removing said steel rails, and a prayer for general relief added.

Defendant answered and an issue was joined. Upon the hearing, a decree was granted complainant. Defendant seeks a reversal of this decree:

1. Because it was not supported by the evidence.

2. Because an estoppel could not be proved and a decree based upon it, without proper allegations of estoppel in the bill of complaint.

The entire dispute upon the facts relates to the question of the title to the steel rails and angle bases mentioned in the bill of sale. We find the following to be the facts established by the proofs: Mr. Silsby had promoted the organization of this road, without any considerable amount of money, expecting to interest others who would invest enough money to make sufficient showing so that the stock would be salable. Mr. Ode Russ, through previous arrangements made with Silsby on October 9, 1901, induced Mr. W. H. Deubel of Ypsilanti to invest in the enterprise. An arrangement was made whereby Deubel was to pay $2,-500, Russ to do work for his share amounting to $2,500, and the three men, Silsby, Deubel, and Russ, were each to own a one-third interest in the road, and afterwards stock was issued to Deubel and Russ on this understanding. Silsby became president, Russ, vice president, and Deubel, treasurer of the company. Deubel's money was to be used to start the work and put the road in condition so that Silsby could finance it. Neither the company nor Silsby at that time had any money. Deubel and Silsby at once went to Chicago to buy rails. Deubel put $1,000 or $1,500 in one of the Chicago banks, and the rails in question were purchased. They were shipped to Flint billed to Silsby as president of the Saginaw Suburban Railway Company. The rails were received and unloaded by Russ, who was superintending the work, and placed along the roadway from Flint towards Mt. Morris. Angle bars, plates, and spikes were also bought in Detroit with money furnished by Deubel.

Later Messrs. A. G. Bishop, D. D. Aitkin, and E. D. Black of Flint became interested and agreed to purchase a controlling interest in the road. One share of stock was issued to each of them, and 248 shares were issued to Clinton Roberts, trustee, by transfer from Silsby, Russ,

and Deubel, making a majority of the stock, for which Bishop, Aitkin, and Black paid $7,800. Of this amount $3,000 was paid to Deubel for his interest in full, being the amount of cash he had paid in. When these parties were negotiating this purchase Silsby furnished them a statement in writing showing the assets and liabilities of the company, and among these assets were included the steel rails in question. This statement appears in the record. After this purchase by Bishop, Aitkin, and Black these rails were placed upon the ties which were on the roadbed. They were bolted together in a continuous line, and spiked to the ties, Silsby being present and assisting by furnishing the gauge and showing how it was to be used. The spiking was not completed nor was the roadbed ballasted. It was desired to make as much show as possible of a road under construction.

Mr. Silsby testifies for defendant that these steel rails were bought by him with the money Deubel paid to him for stock he sold him; that the rails never belonged to the company and were only allowed by him to be put upon the road for the purpose of appearances. He denies that he furnished the statement of assets and liabilities as claimed. Defendant Connelly testifies that he bought this property in good faith and paid $500 cash for it. There is a great preponderance of proof in this record to show that the steel rails were purchased as the property of complainant company, and that no sale or transfer of it was ever afterwards made or authorized. The stock of the concern at the time of the purchase had no value whatever. Deubel was not buying stock of Silsby. He was taking a third interest in this enterprise. His money was to go into the corporation for immediate use. It was expected to start the work, and Deubel's money was to buy rails and pay the expenses of the construction, to make such a showing of actual progress that Silsby could finance the enterprise. There is no evidence in the case that any one claimed at that time that Silsby purchased and owned these rails. His bill of sale is the first intimation in the

record of such claim.    The memorandum of assets, furnished without doubt by Silsby, as testified to by Bishop, Aitken, and Black, supports the testimony of Deubel and Russ that the rails were bought for the company. It amounts to an admission on the part of Silsby of complainant's contention.    Complainant is entitled to its decree from this record upon the question of title to the property.

As against complainant the claims of defendant to this property as a good faith purchaser are not entitled to consideration.    It was in complainant's possession, fastened to the ties upon its roadbed, whether permanently or temporarily is immaterial.    There was sufficient appearing from the location of this property and its possession by complainant to put a prudent man upon his inquiry as to its title.

The court, in the oral opinion given at the time, granted complainant relief upon the ground that Silsby was estopped by his conduct from claiming title to the property, and that the condition of the property as it was located was notice to the public of some rights of complainant therein.    It is urged that in this State in a court of equity estoppel must be pleaded, and that, under its bill of complaint, no basis of right by estoppel having been alleged, complainant cannot be awarded relief upon that ground. The rule is recognized that, in equity in this State, " an estoppel in pais must be pleaded where it constitutes the basis of a right to sue and ground of relief, or as relied upon as a defense."    *Dean* v. *Crall*, 98 Mich. 591–593, and cases cited.    When this question was raised upon the hearing it was claimed by complainant's counsel that the estoppel was specifically pleaded.    An examination of the pleading shows that he was mistaken.    From the record in the case we find that the property belonged to complainant and was never the property of Mr. Silsby.    The court arrived at a right conclusion, and granted complainant relief.    This court has repeatedly said that a case will

not be reversed on account of a wrong reason given by a trial court for a proper conclusion.

A rehearing was asked on the ground that defendant was taken by surprise by the production in evidence of the statement of assets and liabilities claimed to have been furnished by Silsby, and newly-discovered evidence relative thereto. This motion was supported by affidavits of Silsby and Russ claiming that a large portion of the railroad ties included in that statement were not delivered until after the purchase by Bishop, Aitkin, and Black, and that they remembered that the statement was not made until April 3, 1902, for use in negotiating a deal with some Detroit parties. The motion was denied. It is urged that this court should review that decision. The rule is that this court will not review the action of the trial judge upon such application except when it clearly appears that there has been an abuse of his discretion. An examination of these affidavits, and the affidavit of the bookkeeper of the company which sold the railroad ties to complainant company, opposing such motion, together with the statement of assets and liabilities furnished by Silsby, satisfies us that the action of the court was supported by the evidence offered, and the record of the case.

The decree is affirmed, with costs.

GRANT, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.