GOLDBERG *v.* CITIES SERVICE OIL CO.

CITIES SERVICE OIL CO. *v.* GOLDBERG.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—RECORD.
   Questions not properly raised upon the record will not be considered on appeal.

2. EVIDENCE—VENDOR AND PURCHASER—REFORMATION OF INSTRUMENTS.
   Written agreement which controlled relations between gasoline filling station vendor and corporate predecessor of purchaser and out of which purchaser's claims, involved in settlement agreement and release it sought to reform, arose *held*, properly admitted as material to the issue.

3. APPEAL AND ERROR—EVIDENCE—OFFICE RECORDS—ADMISSIBILITY.
   In suit to reform settlement agreement involving purchase of a gasoline filling station, assumption of mortgages and settlement of accounts and vendor's consolidated action at law to collect alleged balance due, admission of office record and ledger sheet of corporate purchaser *held*, not reversible error, where correctness of amounts was admitted in vendor's bill of particulars.

4. SAME—ABANDONMENT OF CLAIMED ERROR—BRIEFS.
   Questions as to admissibility of ledger card not discussed in appellant's brief is deemed to be abandoned on appeal.

5. EVIDENCE—ESTOPPEL—VENDOR AND PURCHASER—COMPROMISE AND SETTLEMENT.
   Testimony as to cost of repairing gasoline filling station after passage of title to purchaser *held*, properly admitted on question of estoppel to deny that check for balance was accepted in full payment in subsequent suit to reform agreement as to purchase of station and settlement of previous accounts, where such issue had been properly raised by pleadings.

6. EQUITY—ESTOPPEL—PLEADING.
   In a court of equity, estoppel must be pleaded.

7. APPEAL AND ERROR—RELEASE—VENDOR AND PURCHASER—EVI-
DENCE.

In litigation between vendor and corporate purchaser of a gaso-
line filling station involving settlement of former's debts with
latter's corporate predecessor, admission of testimony of pur-
chaser's officer and exhibits showing predecessor's release of
vendor from debts *held,* not reversible error in absence of vend-
or's showing of prejudice.

8. SAME—PREJUDICE.

One alleging error must show prejudice therefrom.

9. REFORMATION OF INSTRUMENTS—PAROL EVIDENCE.

Parol evidence is sufficient to warrant the reformation of a writ-
ten instrument.

10. SAME—ASSUMPTION OF DEBTS—MUTUAL MISTAKE.

In suit to reform settlement agreement, involving purchase of a
gasoline filling station and settlement of accounts, in order
to show that unpaid amounts of mortgages and taxes were to
be deducted from conceded gross amount of purchase price,
parol evidence *held,* admissible to show mistake in written con-
tract notwithstanding general rule against admission of such
evidence.

11. EVIDENCE—VENDOR AND PURCHASER—REFORMATION OF INSTRU-
MENTS—POSSESSION.

In suit to reform contract involving sale of gasoline filling station
and settlement of accounts, brought after purchaser had taken
possession, evidence as to stock and accessories delivered to
station after its purchase *held,* admissible to show when posses-
sion was given but not for purpose of showing inadvertent
omission of certain language from settlement agreement.

12. SAME—REBUTTAL—REFORMATION OF INSTRUMENTS.

Purchaser's evidence as to date upon which mutual release was
signed, in suit to reform contract involving purchase of a gaso-
line filling station and settlement of accounts *held,* proper re-
buttal to meet vendor's testimony on that subject.

13. EQUITY—FINDINGS OF FACT—REVIEW.

In equity the scope of review of findings of fact is broad.

14. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—RECORD.

In suit to reform agreement for purchase of a gasoline filling sta-
tion and settlement of accounts on ground of mutual mistake,

record *held,* to justify decree for purchaser that mortgage and tax indebtedness against station was to be deducted from gross price, although evidence was flatly contradictory.

15. EQUITY—APPEAL AND ERROR—CREDIBILITY OF WITNESSES.

In suit to reform written agreement on ground of mutual mistake, conclusion of trial judge *held,* controlling, where question was one entirely of fact, testimony was in sharp conflict and result depended upon credibility to be given to the witnesses, in view of judge's better position to determine the truth than those who did not see the witnesses.

16. REFORMATION OF INSTRUMENTS—EQUITY—MUTUAL MISTAKE—EVIDENCE.

Although courts do not make contracts for parties, a court of equity will, upon clear and satisfactory evidence of a mutual mistake, reform a written agreement to conform to what the minds of the parties met on, intended and supposed they had expressed.

17. SAME—EVIDENCE—MISTAKE.

The evidence of mistake in a written contract on which the court should act in granting reformation ought to be so clear as to establish the fact beyond cavil, especially where party setting up the mistake drafted the instrument.

18. SAME—MUTUAL MISTAKE—EVIDENCE.

Evidence of mutual mistake in written agreement for sale of gasoline filling station and settlement of vendor's accounts with purchaser's predecessor *held,* to clearly establish purchaser's right to have outstanding mortgage and tax indebtedness deducted from gross purchase price, notwithstanding its attorney participated with vendor in drafting terms of agreement, contract was drawn in their presence and read over by each before it was signed.

Appeal from Wayne; Webster (Arthur), J. Submitted January 8, 1936. (Docket Nos. 3, 4, Calendar Nos. 38,109, 38,110.) Decided April 6, 1936.

Assumpsit by Albert Goldberg against Cities Service Oil Company, a Michigan corporation, for sums alleged to be due under a written contract.

Bill by Cities Service Oil Company against Albert Goldberg for reformation of the contract on account of mutual mistake. Cases consolidated for trial and appeal. Judgment for defendant. Decree for plaintiff. Albert Goldberg appeals. Affirmed.

*William V. Capler,* for appellant.

*Warren, Hill, Hamblen, Essery & Lewis* (*Charles E. Lewis* and *Thomas H. Adams,* of counsel), for appellee.

Bushnell, J. The first case is an action at law to recover a balance claimed to be due upon the purchase price of real estate; the second is a chancery action to reform the instrument upon which the plaintiff at law relied. By agreement, the testimony in the chancery cause was introduced in the law action with slight additions. The parties in the two cases are the same.

The oil company obtained a decree for reformation and a judgment for no cause of action. The appeal in each case is covered by the same record.

In 1927, Goldberg, desiring to erect a gasoline filling station, entered into certain agreements with Cities Service Oil Company, an Ohio corporation (not a party hereto), whereby the oil company loaned funds and sold equipment, taking as security a real estate mortgage on other property and a chattel mortgage upon the installed equipment. Later, Cities Service Oil Company, a Michigan corporation, was formed and took over the operations of the Ohio corporation in this State, including the collection of its outstanding accounts. In 1930 the station was being operated by Goldberg's tenant, Radding. Goldberg had been slow in making his payments and Radding was also indebted to the oil company.

Suit was instituted against Radding January 10, 1930.

Negotiations for a settlement between the parties hereto culminated in a written agreement on January 20, 1930.  It is conceded that the following was then due:

Station construction, balance of Goldberg's
  unpaid note ...........................$3,000.00
Interest on same, approximately .........   285.13
Balance due on equipment account........   600.00
Gasoline, oil, etc., account...............   877.04
                                          ----------
                                          $4,762.17

In the agreement, Goldberg offered to sell the station to the oil company for $14,500 with the proviso that the foregoing items were to be deducted.  His offer also stated that the mortgage and tax indebtedness against the property was as follows:  A first mortgage of $4,000, a second of $3,000, upon both of which certain payments of principal and interest had been made, and unpaid taxes amounting to $1,324.13.  He agreed to deliver a warranty deed subject to the mortgages and outstanding indebtedness, and to use the language of the offer "as above mentioned, all of which you shall assume and agree to pay."

This offer was accepted by the oil company and the deal was finally consummated on February 17th. Goldberg delivered his deed and received a check for a net balance of $3,421.56 and the parties executed a mutual release for $1 and other valuable considerations.  A statement attached to the check recited that the amount paid was for "net equity after payment of mortgage and taxes plus accounts due Cities Service Oil Company on property at northeast corner of Canfield and Chalmers ave-

nues.'' The check read on its face, ''in full of above account,'' and above Goldberg's indorsement on the reverse thereof appears:

''Your indorsement constitutes a receipt on payment of statement attached.''

When Goldberg received the check he made a separate memoranda of the various amounts which entered into the computation, having before him the discharge of the chattel mortgage, a bill of sale, the warranty deed, an assignment of the Radding account to Goldberg, the voucher check and the mutual release.

Goldberg testified that he was not represented by counsel, and that ''I checked over the amount and found it not correct.'' In explanation he said:

''I had given them possession in the morning, and I knew that if I refused to take the check they had given me, they could hold possession of the station under the deed, or the first lease they claimed to have. * * * I told them that very night that these figures are not correct.''

The oil company's counsel testified:

''When I gave this check in the amount of $3,421.56 to Mr. Goldberg he made no comment whatsoever in connection with it. He said he was glad to get it, he wanted to pay off some bills he had, he was very anxious to get it. In fact, he came into my office several times before, just for that reason, to see how soon he could close the deal.''

Goldberg claims he returned the next day to protest, was offered $36 more ''and after a few harsh words I told him, he ordered me out of the office.''

The company's witness says there was a conversation on the 20th about $36 which Goldberg claimed

was still due him as a premium for the discharge of one of the mortgages.

The check was paid on February 18th and Goldberg commenced his law action on March 19th without making any other demands.

The trial judge said:

"The meritorious issue before the court is whether or not at the time the option agreement of January 20, 1930, was entered into there was a mutual mistake of fact with reference to the assumption of the mortgage on the property, or if not a mutual mistake of fact if there was a mistake of fact on the part of the defendant company and conduct on the part of the plaintiff which estops him from asserting his claim at this time."

Following a careful review of the testimony, the court said:

"The conduct of Goldberg at the time of closing the transaction and shortly thereafter is testimony which strongly corroborates the claims of the Cities Service that there was a mutual mistake of fact. In this respect it is very much like the situation presented in the case of *Osterhout & Fox Lumber Co.* v. *Rice,* 93 Mich. 353, 357.

"I cannot conceive of a man who honestly thought he had some $9,000 due him on the closing of a deal walking out of the other's man's office with $3,000 in the form of a check which recites that it was in full payment. Certainly the ordinary man finding himself with only $3,000 instead of $9,000 would have returned at once and protested vigorously. He would never go to the bank and cash the check and remain quiescent as did Goldberg in the case at bar. This conduct convinces me that the parties mutually understood they were dealing on the basis of a gross price for the property of $14,500, from which not

only the accounts but the first and second mortgages as well were to be deducted."

Were certain documents pertaining to transactions between Goldberg and the Ohio corporation admissible? Four of the five exhibits mentioned in this question are not included in the record.

"Questions not properly raised upon the record will not be considered." *Wiers* v. *Shaw-Walker Co.,* 171 Mich. 324, 330.

See, also, *LaFevere* v. *Corneail,* 229 Mich. 178.

The remaining exhibit is the original agreement between Goldberg and the Ohio corporation dated May 19, 1927. No question is raised about the admissibility of the agreement upon which the bill of complaint was founded, viz., that of January 20, 1930. Goldberg insisted upon "a release in full to me on any obligations of any sort or nature arising out of my dealings with you and the assignment of your account with Bernard Radding." The exhibit in question was received conditionally and when examined appeared to control the relations between Goldberg and the Ohio corporation out of which the claim of the Michigan corporation arose. It bears directly upon the terms of the settlement and the release and is therefore material to the issue.

It is claimed that certain office records and a copy of a ledger sheet of the oil company were inadmissible because not properly identified. We do not understand that the amounts shown thereon as due were disputed by Goldberg and their correctness seems to be admitted in his bill of particulars. This disposes of the alleged error and makes an extended discussion of the admissibility of this class of evidence unnecessary.

Objection is urged as to the admission of the ledger card of the Radding account, but this is not discussed in appellant's brief and therefore is deemed to be abandoned.

Over objection a witness was permitted to testify regarding the expenditure of moneys for repairs to the premises after the title had passed to the oil company. When asked by the court, "How does that affect the issue?" the oil company's counsel replied:

"The defendant in this case accepted a check bearing this indorsement on it, that it was in payment of the net equity after deduction of mortgages and so forth, knowing, or having been told that the plaintiff would have to expend money in putting the station in proper condition. He allowed the plaintiff to assume that the deal was closed at that time, and allowed him to go on spending money, and I think it is important in the matter of estoppel."

The ruling of the court was that the effect of the testimony would be limited to the question of estoppel and for the purpose of showing a change of position on the part of Goldberg. Further objection was made to the reception of records in corroboration of the testimony of this witness.

The bill of complaint avers:

"That before the closing of the transaction, defendant was informed that plaintiff would have to spend approximately $500 to put the station in a condition similar to other stations owned by plaintiff and that thereafter plaintiff took possession of the property and expended approximately $400 for that purpose; that the taxes were paid by mail the same evening and on the following day the first mortgage was paid and discharged and shortly thereafter the second mortgage was paid and discharged."

We presume counsel had in mind our holding that in a court of equity estoppel must be pleaded. *Dean* v. *Crall,* 98 Mich. 591 (39 Am. St. Rep. 571), and *Saginaw Suburban R. Co.* v. *Connelly,* 146 Mich. 395. It was pleaded and denied and the testimony was properly admitted.

Appellant next contends that the testimony of the oil company's secretary and treasurer, Slavik, was inadmissible as to transactions between the Michigan and Ohio corporations as were vouchers showing payment of such items. Appellee admits that this testimony is not essential to its case and says it was offered "in order that there might be no question in the court's mind that Goldberg had not only been relieved of these obligations by the mutual release, exhibit 15, * * * but also by the actual payment of these sums by the appellee oil company to the Ohio company." One alleging error must show prejudice therefrom. *Granger* v. *Darling,* 156 Mich. 31. None has been shown nor are any authorities cited in support of appellant's claim of error.

It is argued that the following question and answer thereto were prejudicial and incompetent.

"*Q.* At the time you signed your approval to exhibit 24, what was your understanding as to the deal which you were approving? * * *

"*A.* My understanding was that Mr. Goldberg's service station was to be purchased for the sum of $14,500 less a mortgage on the property, the accounts of Mr. Goldberg and Mr. Radding and less the taxes, and that there was to be an expenditure on our part in the sum of $200 for attorney fees, $500 expenditure for putting the thing in good condition."

Exhibit 24 is the report of the witness to his company and details the location of the station, its de-

scription, the necessity for the form of the settlement with Goldberg and amounted to a request for authority to consummate the proposed transaction.

"Parol evidence is sufficient to warrant the reformation of a written instrument." *Moss* v. *Van Wagnen,* 249 Mich. 218, 222.

The theory of this rule is well stated in 23 R. C. L. § 66, p. 366, as follows:

"It is practically a universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is always admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had. This doctrine impinges on and limits the salutary rule of law against the admission of parol evidence to vary a written contract, but experience has clearly shown this to be necessary; otherwise a rule adopted by the courts as a protection against fraud and false swearing would, as was said in regard to the analogous rule known as the statute of frauds, become the instrument of the very fraud it was intended to prevent. Evidence of fraud or mistake is seldom found in the instrument itself, from which it follows that unless parol evidence may be admitted for that purpose, the aggrieved party would have as little hope of redress in a court of equity as in a court of law."

Complaint is made of the reception of exhibits showing stock and accessories delivered to the station after its purchase. These exhibits have a direct bearing upon Goldberg's testimony as to when possession was given to the oil company but not for the affirmative purpose of showing the inadvertent omission of certain language from the settlement

agreement. As such, they were competent and properly admitted.

Other exhibits were introduced for the purpose of meeting Goldberg's testimony that he signed the mutual release on February 14th, although it is dated February 20th. These tend to show that the release was mailed from Detroit to Slavik at the oil company's Adrian office on the 13th. This was proper rebuttal testimony.

Appellant insists that the oil company is not entitled to reformation of the agreement upon the grounds of mutual mistake and since he is not estopped from recovering the balance claimed because of the acceptance of a check for less than the full amount due him, he is therefore entitled to a judgment for the amount claimed in his amended bill of particulars. In equity the scope of review of findings of fact is broad. *Sun Life Assurance Co. of Canada* v. *Allen,* 270 Mich. 272. The parties differ as to what items should be deducted from the gross price. The oil company claims it was agreed that these should include all mortgage and tax indebtedness as well as the Goldberg and Radding accounts. Goldberg claims the mortgage and tax items are not deductible. Mr. Ives, attorney who had principal charge of the negotiations, testified to the former. Mr. Goldberg denied this. Our examination of the record satisfies us that a mutual mistake of fact, common to both parties, is established. Further,

"The question is one entirely of fact, with the testimony in sharp conflict. We think the learned circuit judge reached the correct conclusion. The result depended upon the credibility to be given to the witnesses. In such case the circuit judge is in a better position to determine the truth than are those who have not the opportunity to see them." *Scheurmann* v. *Styninger,* 130 Mich. 468.

"Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument. Back of nearly every written instrument lies a parol agreement, merged therein, but the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake." *Lee State Bank* v. *McElheny,* 227 Mich. 322, 327.

It is urged that "stronger proof is necessary where the person asking reformation prepared the instrument." The correct rule is stated in *Vary* v. *Shea,* 36 Mich. 388, 398, and reiterated in *Long* v. *Bibbler,* 225 Mich. 261, 263:

"The evidence of mistake in a written contract, on which the court should act in giving relief, ought to be so clear as to establish the fact beyond cavil. Especially should this be the case when the party setting up the mistake has had the contract prepared by his own professional advisor and apparently with care and deliberation."

Such a rule is one of common sense and affords protection under appropriate facts and circumstances to the unwary and innocent. The appellee selected Mr. Ives, an attorney, to draft the contract. The parties, with Ives representing the appellee and Goldberg representing himself, participated in drafting the terms of the agreement. Although the contract was drawn in the presence of the parties and read over by each of them before it was signed, nevertheless, mutual mistake is clearly established beyond cavil.

The trial court properly entered a decree, reforming the instrument by adding language to the

effect that the balance due on the mortgages and the outstanding taxes and assessments were to be deducted from the purchase price.

Goldberg has never disputed the fact that the gross price was $14,500, and was perfectly satisfied when he received and cashed the check for $3,421.56. The mutual release bears strong evidence of his understanding that the amount now in dispute was to be deducted and we are convinced that his disputed claim is an afterthought. It is not surprising that the learned circuit judge, in view of the testimony, found there was mutual mistake at the time the agreement was executed even though Goldberg claims he knew when he accepted and cashed the check that it was not correct. There was ample testimony in the case to support the averments in the bill and sufficient in Goldberg's course of conduct to discredit him. *Osterhout & Fox Lumber Co. v. Rice,* 93 Mich. 353. Thus reformed and corrected, the agreement has been fully performed by appellee and it is not indebted to appellant in any sum whatever in this cause.

The decree in the chancery case and the judgment in the law action are both affirmed, with costs to appellee.

NORTH, C. J., and FEAD, WIEST, BUTZEL, EDWARD M. SHARPE, POTTER, and TOY, JJ., concurred.