## URICK *v.* BURGE.

1. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE—EVIDENCE.
   A court should not reform a written instrument on the ground of mutual mistake without clear and satisfactory evidence.

2. SAME—LEASE—LESSEES' RIGHT TO PURCHASE—EVIDENCE.
   Testimony of defendant lessor and of plaintiff's former partner, who had negotiated 10-year lease, that phrase relative to lessees' exclusive right to purchase was only to be exercised at the end of the term, instead of during the term as written in the lease, *held*, to constitute clear and satisfactory evidence of a mutual mistake entitling lessor to reformation of the lease.

3. LANDLORD AND TENANT—CONSTRUCTION OF LEASE—MISTAKE— REFORMATION OF INSTRUMENTS.
   A lessee under a 10-year written lease containing an option to purchase during the term is entitled presently to a determination of rights as to whether there was a mutual mistake as to when such option might be exercised and as to whether part or all of lot was involved and is not to be delayed some 4 years until the end of the term to have such issues resolved.

4. SPECIFIC PERFORMANCE—REMAND—EVIDENCE.
   Full opportunity to both parties to offer proofs will be afforded upon remand of suit for specific performance of option to purchase during term of lease, where remand has been necessitated by erroneous determination of trial court in effect reforming the lease on insufficient proofs and failing to give plaintiff an opportunity to give rebuttal evidence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 19 Am Jur, Equity § 389; 45 Am Jur, Reformation of Instruments § 116.
[2] 32 Am Jur, Landlord and Tenant § 47.
[2–4] 32 Am Jur, Landlord and Tenant § 299 *et seq.*
[5] 14 Am Jur, Costs §§ 10, 11.

5. COSTS—FAILURE OF EITHER PARTY TO PREVAIL IN FULL.
   No costs are allowed in suit to reform a lease, where neither party has prevailed in full.

Appeal from Genesee; Gadola (Paul V.), J. Submitted April 3, 1957. (Docket No. 19, Calendar No. 46,854.) Decided July 31, 1957.

Bill by Stephen J. Urick, Jr., doing business as U. & M. Enterprises, against Grace E. Burge, also known Grace B. Burge, for specific performance of option to purchase contained in lease. Cross bill to reform description of property. Bill dismissed. Plaintiff appeals. Reversed and remanded.

*Guy W. Selby* (*L. James Hicks,* of counsel), for plaintiff.

*Frank C. Smith,* for defendant.

KELLY, J. Plaintiff commenced an action in equity to compel defendant to convey to plaintiff "Lot 110 of Assessor's Plat of Maple Hill Gardens," Flint, Michigan, in accordance with the provisions of a written lease. The court concluded that the lease did not express the agreement between the parties, and dismissed plaintiff's bill of complaint.

Plaintiff appeals, contending (1) that the court erred in making a contract for the parties contrary to the clear and definite terms of the lease; (2) that the record does not sustain the court's finding that plaintiff and defendant were "mutually mistaken with regard to the time they agreed upon for the exercise of the option to purchase provision;" and (3) that the court erred in rendering a decision before defendant rested her case and before plaintiff had an opportunity to offer evidence in rebuttal.

The lease was for a 10-year period (July 1, 1951, to June 30, 1961), with plaintiff's right to renew for an additional 10 years.

Plaintiff contemplated erecting a drive-in dairy bar and restaurant, and the lease provided that if plaintiff constructed the dairy bar and decided not to renew his lease for an additional 10-year period defendant would pay to him the dairy bar construction cost. Plaintiff constructed the dairy bar after the lease was signed.

The clause in the lease which the trial court refused to enforce reads as follows:

"It is agreed and understood between the parties hereto that the second parties (plaintiff), their heirs, successors and assigns, during the term of this lease shall have the exclusive right, option and privilege to purchase the above described premises from the first party hereto (defendant) for the sum of $2,000 under terms and conditions to be agreed upon between the parties hereto. If second parties elect to exercise this option, they shall notify first party in writing by registered mail, return receipt requested, properly addressed to her, her heirs, assigns or successors, at her or their last known place of residence."

Three witnesses testified. Defendant was called by plaintiff under the statute* and testified that she signed the lease and read same before signing. Plaintiff also placed on the stand the appraiser, who testified that before the lease was signed he had appraised the property at $2,000, without buildings. Defendant's case consisted of her testimony and that of Mr. Maxwell.

Defendant testified that before signing the lease she questioned plaintiff and his attorney about the option to purchase clause, and was advised by them

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—REPORTER.

that if she "wanted to sell it at the end of 10 years time, he (plaintiff) would have the first chance to buy it," and that plaintiff would have no right to purchase if defendant did not want to sell.

Mr. Maxwell testified that he was plaintiff's partner when the lease was signed; that he had terminated the partnership and sold all interests in the lease to plaintiff about 1 year before plaintiff endeavored to exercise his right to purchase, and that defendant was advised of this fact; that he carried out negotiations for the lease with the defendant and that he then advised the attorney as to "the terms and conditions of that lease, and as to the amount that the property was to be purchased for;" that an appraisal of the property was made and defendant agreed with plaintiff and himself that $2,000 was a fair valuation and, consequently, this amount was written into the lease in the option clause; that his understanding of the lease was that after the expiration of the 10-year period plaintiff would have the first opportunity to purchase provided defendant "wanted to sell the lot."

The trial court, relying upon the testimony of defendant and Mr. Maxwell, stated in its opinion:

"Both of them testified it was their idea the option was not to be exercised until the expiration of the lease; they both testified to that. It is not in the lease in that way. In the opinion of the court, as far as the parties were concerned, it was understood and was considered by each of them, and was their understanding, and they were mutually mistaken. * * *

"The court is not at this time going to pass upon the question of the exercise of the option, because, in the opinion of the court, under the agreement of the parties, it should have been in the lease. It did not contemplate the exercise of the option until the expiration of the lease. So the bill of complaint will be dismissed without prejudice."

The court's opinion that "it was not at this time going to pass upon the question of the exercise of the option," was followed by a decree which stated:

"From the undisputed testimony, the intent of both lessor and lessee was that any option to purchase by the lessee could only be exercised at the expiration of the term of said lease, to-wit: June 30, 1961, and, hence, plaintiff's action is premature."

The court "ordered, adjudged and decreed　*　*　* that the plaintiff's bill of complaint be dismissed without prejudice to further action upon the expiration of the term of said lease."

A court should not reform a written instrument without clear and satisfactory evidence. In *Goldberg* v. *Cities Service Oil Co.*, 275 Mich 199, 211, we approved the following:

" 'Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument. Back of nearly every written instrument lies a parol agreement, merged therein, but the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake.' "

Defendant admits she read the lease, but does not testify that she did not understand its terms nor that she believed the option clause therein provided that plaintiff was to have first right to purchase if she decided to sell. Defendant gives no reason why the written provision was allowed to remain in the lease if same was contrary to plaintiff and defendant's understanding as to plaintiff's right to purchase.

Maxwell merely offered his conclusion as to an understanding between the parties contrary to the clear terms of the lease, but offers no testimony as to any conversation between the parties to sustain such conclusion, or any reason as to why a lease was signed that did not express the agreement.

The testimony of the defendant and of Maxwell does not constitute "clear and satisfactory evidence of a mutual mistake," as required under *Goldberg* v. *Cities Service Oil Co., supra.*

Defendant filed a cross bill asking the court to reform the lease so that the property leased be confined to the 58 feet now occupied by plaintiff, instead of the entire lot as described in the lease. Defendant testified that the agreement only related to the front half of the lot upon which the dairy bar was to be constructed, and Maxwell testified that he also understood the lease only referred to the front half of lot 110. The trial court commented upon their testimony in his opinion, but did not, in said opinion nor in the decree, grant or refuse defendant's request that the lease be reformed.

Plaintiff filed a motion for rehearing and supported same with an affidavit by the attorney who tried the case, stating "that the court, on its own initiative, rendered a decision which was prejudicial to the plaintiff before the defendant had rested, and also before the plaintiff had the opportunity to introduce rebuttal witnesses on his behalf who were present in court or available." The court denied the motion for rehearing without in any way commenting upon the matters set forth in said motion or in the affidavit.

Plaintiff and defendant are entitled to a determination of rights, both in regard to the option to purchase and as to whether the lease or agreement refers to all of lot 110 or only a part thereof. This

should not be held in abeyance until the conclusion of the 10-year period.

It is not necessary in this opinion to comment on plaintiff's claim that the court prematurely rendered a decision, as this case is remanded for further proofs and plaintiff will have full opportunity to offer testimony. Likewise, defendant will have a similar opportunity, and our opinion herein expressed that the proofs submitted in this record do not constitute clear and satisfactory evidence authorizing the court to reform the written instrument, does not restrict defendant from offering proof on this question on further hearing, including amplification and clarification of the testimony of both Mr. Maxwell and defendant.

An order should enter remanding the case for the purpose of taking further proofs and determining the issues presented on the record, in accordance with this opinion. Appellant may have costs of this appeal.

SHARPE and CARR, JJ., concurred with KELLY, J.

SMITH, J. (*concurring*). The opinion of Mr. Justice KELLY cites the following from *Goldberg* v. *Cities Service Oil Co.*, 275 Mich 199, 211:

" 'Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument. Back of nearly every written instrument lies a parol agreement, merged therein, but the writing controls unless a court of equity, on invocation of its power, finds the writing does not express what the minds of the parties met on, and intended, and supposed they had expressed, but which miscarried by mutual mistake.' *Lee State Bank* v. *McElheny*, 227 Mich 322, 327.' "

Since no question of unilateral mistake is raised in this case (see *Denton* v. *Utley,* 350 Mich 332) the foregoing quotation may be taken as an accurate expression of the principles governing our decision in the case before us.

The chancellor, it is seen, demands "clear and satisfactory" evidence of mutual mistake.

I cannot conceive of clearer and more satisfactory evidence that a mistake was made in a lease than to have both the lessor and lessee tell us so.

This phase of the controversy turned upon whether a certain option could be exercised during the term of the lease or only at the expiration thereof. The lessor, Grace E. Burge, testified:

"*Q.* Did you have any question about it at that time?

"*A.* Yes, I did. I questioned the part in there about the option.

"*Q.* Who answered your questions?

"*A.* Both Mr. Urick and Mr. Pearson answered the question.

"*Q.* What was the answer?

"*A.* The option, if I wanted to sell it at the end of 10-years time, he would have the first chance to buy it."

The lessee was a partnership. One of the partners did not testify. The other (he was the one who did the negotiating of the lease, "I carried on in behalf of the partnership in negotiating with Mrs. Burge") testified:

"My understanding of the lease was that after the determination of the lease, if she wanted to sell the lot, if we could buy the lot minus the buildings for $2,000, or be given the first opportunity to buy it."

Both parties, then, agree to their intent that the purchase option was to be exercised at the expiration of the lease. Understandably enough, the trial chancellor so held.

Now, upon what conceivable ground can we in this Court, who saw nothing of the witnesses and their demeanor, who heard nothing of their testimony, with its affirmations and its possible evasions, overrule the trial chancellor?

I can find none, consistent with our exercise of our proper appellate function. We noted in *Friedt* v. *City of Detroit*, 343 Mich 610, dissent 623, that we cannot be both a court of review and a trial court (or commission or agency). True, we hear chancery cases *de novo*, but a proper respect for the wisdom and responsibilities of the trial chancellor, as well as a wholesome realization that even appellate judges may err, particularly in divining the truth of testimony from the printed page, long ago caused us to declare, through CHRISTIANCY, J., (*Green* v. *Langdon,* 28 Mich 221, 225) that:

"Upon all of these questions the testimony is very conflicting, and judging of it only as it appears upon paper, it would seem upon some of these questions to be nearly equally balanced; though we think, upon the whole, after a careful examination, there is a slight preponderance in favor of the case as claimed by the defendants. We are quite satisfied of the competency of Dillon, and of his deliberate purpose not to allow his property to go to his children; and we are inclined to the belief, from the evidence, that the indorsements upon the mortgage were made at his suggestion, by his direction, and in his presence, for the purpose already stated. Upon this point especially the credit to be given to the conflicting testimony would depend greatly upon the appearance, manner and deportment of the witnesses, in giving their testimony. Of these means of estimating the weight due to the evidence of the respective witnesses we are deprived. And as all the evidence was given in open court, in the county in which the witnesses and the judge resided, we think it right to say that his finding is entitled to much weight,

and ought not to be overruled, where the evidence appears to us to be so nearly balanced."

Appellant's brief iterates and reiterates that the parties read the lease before they signed it, and Mr. Justice KELLY notes that Mrs. Burge "admits she read the lease." So what? If reading a written instrument (which both parties thereto admit did not express their intention) precludes reformation thereof on the ground of mutual mistake, then we wipe out hundreds of years of equity and elevate the scrivener to the ermine. We will take no part in this retreat to the primitive law, so well described by Professor Andreas Heusler in his Institutions of Germanic Private Law, 1, 60 (quoted in 9 Wigmore's Treatise on Evidence [3d ed], § 2405, p 12) :

" 'A strictly formal system of law knows no contrast between the will and the utterance, and no possibility of a contradiction between the two. This is thoroughly the conception of the Germanic law. The utterance is the law's embodiment. No more, and yet no less, than what is uttered can bind or loose. Hence the minute precision with which obligations of debt were written out. * * * Hence the legal proverbs, "one man one word," "the word stands," "words make the bargain," and the like. A necessary result is that mistake in contractual relations receives but scanty considerations. * * * All that a man does is judged alone by its external manifestations and its objective effect, not by his inward motive. The law concedes nothing either to good or to bad faith, as long as it is concerned with the legal consequences of conduct.' "

We do not dispute the seductive simplicities of this doctrine. At one stroke we remove from the law all the vexing and confounding questions about what goes on in the mind of man. Who cares? There stands the scroll.

But it has never been doubted, from the very beginnings of what we know as equity, that the chancellor does indeed concern himself with the intent of people. Specifically, as to the situation confronting us, that he will amend an instrument to represent the actual agreement of the parties, regardless of the content of the parchment. Thus the case of *Baker* v. *Paine,* 1 Ves Sen 456 (27 Eng Rep 1140), comes to us from the year 1750. It involved a sale of goods, with certain deductions of charges to be made. The plaintiff asserted that "it appeared by the minutes and the calculations made by themselves at the time, that this was contrary to the intent, and a mistake by the drawer." Defendant (who admitted the mistake) objected to parol evidence on the ground that it would "defeat written acts." The Lord Chancellor, however, held otherwise, saying (p 459), "Then I am of opinion these minutes must be taken to be the agreement of the parties; and if any material variation (as is admitted for defendant) the articles must be rectified."

Here, too, the articles should be rectified upon the proofs made, despite the writing and the parties' reading thereof. "Neither party," in the words of Mr. Justice Holmes, "has purported or been understood to express assent to the conveyance as it stands." (*Goode* v. *Riley,* 153 Mass 585, 587 [28 NE 228].) The case, however, was not concluded in the court below. I therefore concur with Mr. Justice KELLY, for reasons stated by him in the balance of his opinion, that the case be remanded for the taking of proofs and the determination of the remaining issues involved in the case in accordance with this opinion.

No costs, neither party having fully prevailed.

DETHMERS, C. J., and EDWARDS, VOELKER, and BLACK, JJ., concurred with SMITH, J.